UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK SCHAND, MIA SCHAND, MARK SCHAND JR., QUINTON SCHAND, and KIELE SCHAND,<br>Plaintiff,<br><br>v.<br><br>Former<br>Springfield Police Detectives ELMER MCMAHON, LEONARD SCAMMONS, RAYMOND P. MUISE,<br>And MICHAEL REID,<br>Defendants | CIVIL ACTION NO.: 3:15-cv-30148 |

**TRIAL BRIEF SUBMITTED FOR THE COURT'S CONSIDERATION BY DEFENDANTS MCMAHON, SCAMMONS, MUISE AND REID**

I.   Introduction

The Plaintiff[1], Mark Schand (hereinafter "Schand" or "Plaintiff"), has brought this action pursuant to 42 U.S.C. §1983 and state law claims arising from his claim of being wrongfully convicted for murder in 1987 and serving twenty seven years in prison. This case arises out of the murder of a young woman named Victoria Seymour ("Seymour murder"), the shooting of a man named Anthony Cooke and the robbery of a drug dealer named Charles "Heavy" Stokes at approximately 11:30 p.m. on September 2, 1986 in Springfield, MA. On that night, all of the victims were outside a local bar named The After Five Lounge ("After Five"), which was located on the corner of Rifle and Chestnut Streets in Springfield. Charles Stokes was outside with his

---

[1] Schand's immediate family members, i.e. Mia Schand, Mark Schand, Jr., Quinton Schand and Kiele Schand had summary judgment awarded against them and have no live claims at this time.
.

1

brother, David Stokes, Anthony Cooke and a man named Michael Hosten. Michael Bernard and William Darko, who later provided eyewitness identifications of Schand, were located on a rooftop deck across from where Stokes and his compatriots were located.

Charles Stokes was a drug dealer, and had drugs on him that night for sale. Persons unknown to Stokes approached him. Someone grabbed a gold chain off the neck of David Stokes, and a gun was drawn. Charles Stokes attempted to flee. Shots rang out, mortally wounding Vicki Seymour, who was standing some distance away outside the bar. Cooke sustained a gunshot wound to the shoulder. Charles Stokes tripped and fell, and a man with a gun stood over him, and robbed him of his drugs.

The Springfield Police Department ("SPD") responded to the murder scene. Either the night of the murder or the very next day the SPD interviewed two high school students, Al Chase and LeVonne Dixon, who were in a local pizza place, the Pizza King ("Pizza King"), about a half mile from the Seymour murder scene shortly before the murder. They told the police some young, black men had come into the Pizza King, and asked them questions about someone stealing gold chains. Dixon and Chase indicated the men in the Pizza King were from Hartford.

Having been lead to believe the assailants may have been from Hartford, the SPD focused some of their investigatory efforts on Hartford. A confidential informant, one Kenneth Whitted, told the SPD he could identify men from the Hartford area who had been known to frequent Springfield. On 9/17/86 Assad and Scammons took Whitted from jail to the Hartford Police Department. Whitted picked out six (6) photos of young black men who he asserted had been in Springfield at various times over the preceding summer. This was the end of Assad's involvement with this murder investigation. The photos picked out that day were shown to

2

various witnesses, including Chase, Dixon and Cooke. There was no positive identification of any of those men.

Scammons and Doty returned to Hartford on 9/23/86, and met with Hartford Police Officers who assisted in identifying young black men who were known to be involved in gang activities in the Hartford area and who matched the general description of the assailant. They obtained approximately 30 photos that day. Within this group were photos of Schand, and of a man named Randy Weaver. On 10/24/86 the new photos were shown to Michael Bernard, eyewitness to the murder. Bernard positively identified Schand as the man with a gun the night of the Seymour murder. Bernard has never recanted his identification of Schand.

On the basis of the Bernard's eyewitness identification an arrest warrant for Schand was issued by the Assistant Clerk of the Springfield Division of the Commonwealth of Massachusetts District Court, who found probable cause for the warrant to issue. Schand was arrested on the warrant on 10/29/86 by the Hartford police. SPD officers and the Hampden County District Attorney assigned to the case, then Assistant District Attorney Francis Bloom ("Bloom") went to Hartford to interview Schand. Schand was read his *Miranda* rights and he agreed to speak with the officers. He denied any knowledge of the murder, and said he had only been in Springfield once in his life. At that meeting Schand offered no further information regarding his whereabouts on the night of the Seymour murder, nor did he ever again offer to speak to the SPD regarding the Seymour murder. No one ever requested the SPD interview any of the alibi witnesses offered by Schand at the criminal trial.

Five (5) additional eyewitnesses positively identified Schand as being present with a gun on the night of the murder, i.e. Hosten, October 30, 1986; Darko, 12/31/86, Stokes, Stokes and Cooke.

3

In answers to interrogatories the Plaintiff alleged the misconduct of various Defendants fell into broad categories. Schand alleges Reid, Scammons, Muise and Assad used unduly suggestive photo arrays. Specifically they allege the photo array shown on October 30, 1986 was suggestive, that a Polaroid of Schand was interspersed with non-Polaroid photographs in various photo arrays, that more than one photo of Schand was included in photo arrays shown to Charles Stokes, and that no written record was kept of the photo arrays used in the Schand matter.

Schand also alleges misconduct relating to the line-up conducted by and at the SPD on 12/15/86. Schand alleges the make-up of the participants was unduly suggestive, that various witnesses knew all of the participants except Schand, and that some of the witnesses had seen photos of Schand before the line-up.

Prior to the criminal trial, the matter of *Commonwealth v. Mark Schand* was submitted to a grand jury on Dec. 15, 1986. Following two days of testimony, the grand jury returned an indictment against Schand for the Seymour murder. Schand was represented by counsel at the criminal proceedings, i.e. Attorney Roy Anderson ("Anderson"). Anderson filed on Schand's behalf a Motion to Suppress Identifications, and an evidentiary hearing on that motion was held on July 14, 1987. At the conclusion of the Motion to Suppress hearing, the judge ruled that the motion was denied.

The criminal trial was held in the Hampden County Superior Court from November 9 - 20, 1987. During the criminal trial the following witnesses testified. Eight (8) identification witnesses testified in the Commonwealth's direct case. Chase and Dixon, the two juveniles, placed Schand within blocks of the After Five a few minutes before the Seymour murder. Charles Stokes, victim of the armed robbery, identified the Plaintiff as the man in possession of a

4

handgun and as the man who robbed him. Cooke, who along with the murder victim was also shot during the incident, identified the Plaintiff as the man with the gun who robbed Charles Stokes after the shooting. David Stokes identified the Plaintiff as the man who held up Charles Stokes. Hosten also identified Schand as the gunman that robbed Charles Stokes. Bernard identified Schand as the gunman that robbed Charles Stokes. Anderson and Bloom examined the identification witnesses; including asking about any "deals" or preferential treatment that was promised as a result of testifying in the criminal trial.

Plaintiff presented an alibi defense at the trial.  Plaintiff's alibi was that on the date of the murder he had a dental procedure in the morning. Plaintiff returned to his apartment, in the company of his now wife, Mia Schand ("Mia").  Mia had to work that day, so Plaintiff spent the day at his sister's apartment.  Around 9:00 p.m. Plaintiff went to Pavar's, the beauty salon where Mia worked.  Mia was not yet ready to leave.  Plaintiff left, and returned to the salon at about 10:00 p.m.  He took Mia's sister Lorrie Williams-Bey home and returned a third time to Pavar's. Plaintiff waited in the car while Mia finished with her last customer.  Plaintiff and Mia left the salon at approximately 11:30 p.m.  Plaintiff was in severe pain, so they stopped at Jerry Mack's Cafe on their way home.  Plaintiff got a shot of rum. Plaintiff and Mia arrived home around 12:30 a.m.  In addition to Mia, Plaintiff's alibi witnesses were: Thomas Accierno, Pearl Andrado, Janice Parker, Lorrie Williams-Bey, Selena Williams-Bey. At the conclusion of the trial the jury returned a verdict of guilty on all charges.  Schand was sentenced to life in prison without the possibility of parole.

On September 12, 1991, appellate counsel for Schand, Linda Thompson and John Thompson ("Thompsons"), filed a Motion for a New Trial in the Superior Court.  In that motion the Thompsons, on Schand's behalf, alleged as the basis for his Motion for a New Trial, (a)

5

prosecutorial misconduct, (b) newly discovered evidence, and (c) ineffective assistance of counsel. An evidentiary hearing was held on the motion on February 24 - 28 and April 5 - April 6, 1992. At the conclusion of that hearing, the motion judge issued a written decision denying the Motion for a New Trial. Schand appealed the denial of his Motion for a New Trial to the Supreme Judicial Court for the Commonwealth of Massachusetts ("SJC"). The SJC affirmed the trial court's denial of the Motion for a New Trial.

On June 4, 1997, the Thompsons, on behalf of Schand, filed a habeas petition in U.S. Federal District Court for the Commonwealth of Massachusetts. The habeas petition was denied, and the certificate of appealability was also denied. The denial of the habeas petition was then appealed to the First Circuit Court of Appeals, which upheld the denial. On May 6, 2013 Schand filed another Motion for a New Trial based upon newly discovered evidence and allegations of prosecutorial impropriety. An evidentiary hearing was held on August 9, 2013. At the hearing the following witnesses testified: Randy Weaver, Martin Smith, Tracey Fisher, Calvin Morgan, Roy Anderson and Anthony Cooke. Of these witnesses, Fisher, Smith, Morgan and Weaver had never before testified in any criminal proceedings regarding Schand, and stated they were at the scene of the Seymour murder and Schand was not there. Anderson testified about the alleged failure to produce certain documents by the prosecutor. Cooke recanted his earlier identification of Schand, and stated no police officer or prosecutor suggested that he identify Schand as the shooter at the After Five. Cooke stated that he made the identification in 1986 because other inmates suggested to him that a positive identification would earn him a favorable disposition in his pending cases.

Following the evidentiary hearing, the Commonwealth assented to the Motion for a New Trial based upon the grounds that new testimony from Fisher, Weaver and Smith coupled with

6

the recantation of Cooke warranted a new trial. Judge Kinder further stated the Commonwealth did not adopt Schand's claims of actual innocence and prosecutorial misconduct issues which [he] did not, and need not decide.  The Commonwealth thereafter entered a Nolle Prosequi on October 16, 2013.  The grounds were:  the amount of time since the date of the offense, the availability of the witnesses, and continued examination of newly discovered evidence did not allow for continued prosecution.  On or about August 20, 2015 the Plaintiff and his immediate family members filed the within action.

Defendants filed their Motions for Summary Judgment on September 20, 2017. On May 6, 2019, the Honorable Judge Michael Ponsor issued a memorandum and order. The Motions for Summary Judgment of all Defendants were allowed, except as to Count I (Suggestive Identification Procedures brought under 42 USC §1983, in violation of the Fourteenth Amendment); Count VI (Conspiracy Pursuant to § 1983); and Count XI (Common Law Malicious Prosecution), as to Defendants, Leonard Scammons, Raymond Muise, Elmer McMahon and Michael Reid. The City of Springfield and Joseph Assad were summarily dismissed from this action as to all counts.

II.     LEGAL STANDARD FOR REMAINING COUNTS

   A. <u>Claim under 42 USC §1983 for overly suggestive identification procedures in violation of the Fourteenth Amendment</u>

In order to be violative of the Fourteenth Amendment, a photo array must be unduly suggestive, i.e. it must highlight in a particularized way that the police want the witness to identify a particular photo.  *See United States v. DeCologero,* 530 F.3d 36, 62 (1st Cir.2008) (noting that undue suggestion depends on "whether the photo array included, as far as was practicable, a reasonable number of persons similar in appearance to the suspect"); *United States*

7

*v. Lau,* 828 F.2d 871, 876 (1st Cir.1987) (characterizing *Simmons,* 390 U.S. at 383–84, 88 S.Ct. 967, as holding that "police should avoid emphasizing picture of suspect in photographic identification").  The photo arrays shown to the witnesses all consisted of young black men with cornrows.  There has been no suggestion or argument that the constitution of the photo arrays was unduly suggestive in and of themselves.  Rather, the Plaintiff has argued that the photo arrays were made unduly suggestive by the inclusion of a Polaroid[2] of Schand, in addition to or instead of a police photo of him.

The issue of the use of the Polaroid has not been argued before this matter.  However, even if the photo array was unduly suggestive, because it contained a Polaroid, that is not the end of the inquiry.  There are five (5) factors relevant to a determination about the reliability of an identification that has been prompted by unduly suggestive means. Those factors are:

> "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*Neil v. Biggers,* 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); See also *U.S. v. Castro-Caicedo,* 775 F.3d 93, 97 (1st Cir., 2014).  In the instant case, six (6) of the eight (8) identification witnesses were eyewitnesses.  The other two identification witnesses placed Schand near the scene at the time of the Seymour murder.  Neither of these witnesses has ever recanted their identifications.  All of the witnesses testified repeatedly of their identification of Schand, including at the criminal trial.  Of the six (6) eyewitnesses, Bernard and Darko have

---

[2] The Defendant officers deny that a Polaroid was ever included in any photo array.  Further, the only evidence in the record relative to when the SPD came into possession of the Polaroid comes from Officer Muise, who testified that he was given the Polaroid by the Hartford Police Department on the day Schand was arrested, i.e. October 29, 1986.

8

never recanted their identification, and the only evidence of any recantation of Hosten is of questionable authenticity[3]. Cooke has stated he knew Schand was not the shooter, but identified him not because of any unduly suggestive procedure, but rather because he believed he could get preferential treatment in an unrelated manner from the District Attorney if he identified Schand. Finally, all of the identifications occurred within six (6) months of the crime, with Bernard and Hosten occurring less than months later, and Darko 4 months later. If the identifications are found to be suggestive, but are also found to be sufficiently reliable, then Schand cannot sustain his burden of showing that the photo identification procedures caused his conviction and incarceration.

### B. Claim under 42 USC §1983 for overly suggestive identification procedures in violation of the Fourteenth Amendment

The Plaintiff has alleged a conspiracy to violate his rights as guaranteed under the Fourteenth Amendment in violation of 42 USC §1983. "A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) (quotation marks and citation omitted). The Plaintiff must show, either by direct evidence or by inference, an actual meeting of minds to violate Plaintiff's constitutional rights. The Plaintiff, in his opposition to the Motion for Summary Judgment, alleges the Defendants actions support an inference of a conspiracy in that they singled out Schand as a suspect and orchestrated unduly

---

[3] A motion in limine to exclude that statement has been filed by the Defendants.

9

suggestive photo arrays and an unduly suggestive line-up[4]. Dkt. 104, pages 32-33. In ruling on the Motion for Summary Judgment, the Court allowed the conspiracy count to go forward, ruling "reasonable inferences might be drawn by a jury regarding coordination among Defendants to obtain Schand's conviction through improper identification procedures." Dkt. 135, page 79. It is clear from the record and the assertions of the Plaintiff that the conspiracy count is limited to acts relating to improper identification procedures.

Even if the ruling of the Court and the position of the Plaintiff did not operate to limit the evidence admissible in advance of this count, to establish liability under this theory Schand must show something more than an alleged failure to investigate other suspects or a failure to investigate his alibi. "The failure of police officers to conduct an adequate investigation is not sufficient to state a civil rights claim under Section 1983 unless there was another recognized constitutional right involved." *Gomez v. Whitney,* 757 F.2d 1005, 1006 (9th Cir.1985)." *Williams v. City of Boston*, 771 F.Supp.2d 190, 200 (D.Mass., 2011). There is no constitutional right to a police investigation. *Id*.

As noted above, Schand must also prove that the alleged conspiracy resulted in actual damages. In the instant case, as set out earlier in this brief, six (6) eyewitnesses identified Schand as the man with the gun on the scene of the Seymour murder. Two of those eyewitnesses never recanted their identifications, and the only evidence of a third's recantation is of questionable authenticity. Moreover, Cooke and Charles Stokes do not allege that the photo arrays influenced their decisions with regard to the identification; they were, rather, motivated by a desire for preferential treatment by the District Attorney's Office.

---

[4] Schand also alleged the Defendants withheld exculpatory evidence, but that claim has been dismissed.

### C. Common Law Claim for Malicious Prosecution

To prevail on a claim for malicious prosecution, a plaintiff must establish that he was damaged because the defendant commenced the original action without probable cause and with improper purpose, and that the original action terminated in his favor. *Beecy v. Pucciarelli*, 387 Mass. 589, 593, 441 N.E.2d 1035 (1982). *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 102–03 (2006) (substituting "improper purpose" for malice in accordance with the Restatement (Second) of Torts).

As to the first factors, i.e. that the action was commenced without probable cause and with malice, the Plaintiff narrowly avoided summary judgment in the Defendants' favor. Dkt. 135, pp 82-85.  The arrest warrant was based upon the eyewitness identification of Michael Bernard; that identification has never been recanted and Bernard is deceased.  As noted by Judge Ponsor, Schand must establish that Bernard was shown the Polaroid, intentionally to taint the photo array, sufficient to undermine the probable cause the eyewitness identification otherwise establishes. *Id*.

### III. ANTICPATED EVIDENTIARY ISSUES

### A. Issues Addressed In Motions In *Limine*

The Defendants have or will be filing multiple motions in *limine* arising out of the Plaintiff's proposed witness list and/or contested exhibits.  These motions will not be recited herein at length, but the following is an overview of the issues addressed in the motions with a brief recitation of the grounds for such motions.  The Defendants rely upon the arguments and case citation in the various motions in support of their requests to have the evidence excluded, and/or limited.

1. *<u>Motions that seek to limit or exclude witness testimony</u>*

    a. Expert Witnesses

The Plaintiff has identified two proposed expert witnesses; Lou Reiter, who is proposed as an expert on police procedures and standards; and Antoinette Kavanaugh, Ph.D., a clinical psychologist, who evaluated and opines on the impact of Schand's incarceration upon himself and his family members.

Defendants seek to strike both the testimony and report of Reiter as his report is concerned solely with the *Monell* issues, which are no longer germane in this matter. Kavanaugh's report and testimony is being challenged under a *Daubert* theory, and under the theory that expert testimony is not necessary for the subject matter and is uniquely charged to the jury for determination. Defendants rely on the arguments and citation in the motions for further support.

    b. Witnesses Not Germane To The Issues in This Case

Plaintiff has listed multiple witnesses who have no bearing upon the only issues in this case, i.e. whether the Defendants acted in 1986 and 1987 to deprive Schand of constitutionally protected rights through the use of unduly suggestive identification procedures, conspired to do same, and acted so that probable cause to arrest was undermined. Specifically the Plaintiff has identified as proposed witnesses multiple persons who had no involvement in or knowledge of these issues at the time. These include Martin Smith, Tracey Fisher and Randy Weaver, who only came forward and provided testimony many years after the conviction in this matter; the Thompsons, who were only involved once the criminal case terminated and have no relevant, or first-hand, evidence to offer; and several private investigators, including McCloskey, Hepburn,

12

Newman and Centurion Ministries, whose knowledge is again not relevant to the live issues, and is rife with hearsay statements.

Additionally, the Defendants are seeking to estop the presentation of any evidence from any witness relative to the alibi offered by Schand; that evidence is not relevant, and Schand fully presented that evidence at his criminal trial, although it was rejected by the jury.

Finally, the Defendants are seeking an order preventing the Plaintiff from offering any evidence about an alleged failure to adequately investigate the murder. As noted above, such a theory is not relevant to this case.

As to all of these matters, Defendants rely on the arguments and citation in the individual motions for further support.

      c. Matters That Are Highly Prejudicial With Little or No Relevancy

Defendants are filing motions in limine to preclude the Plaintiff from eliciting testimony, utilizing documents or referring to any Internal Investigation Unit ("IIU") records of the individual officer, and of any disciplinary actions against Bloom at the Commonwealth of Massachusetts Board of Bar Overseers. These matters are wholly irrelevant and highly prejudicial.

Additionally Defendants are filing a motion in limine to preclude the Plaintiff from arguing or asserting in any way that he has been exonerated, found innocent, has been deemed not guilty, etc. Such assertions are contrary to the facts, and are highly prejudicial. Defendants rely on the arguments and citation in the individual motions for further support.

13

### 2. *Motions To Exclude Documents*

    a. Documents That Are Hearsay

The Plaintiff has listed multiple documents and categories of documents on his proposed exhibit list which are inadmissible hearsay. These documents include transcripts of multiple witnesses who will be available to testify, affidavits of Elda James, Michael Hosten, Roy Anderson, and Martin Smith, and reports of various investigators. Defendants rely on the arguments and citation in the individual motions for further support.

Plaintiff has also listed various polygraph reports. All such reports are hearsay, they have failed to identify any foundational witnesses, and such reports are generally inadmissible. Defendants rely on the arguments and citation in the individual motions for further support.

    b. Schand Medical Records

Plaintiff has indicated his intent to offer medical records from his incarceration as evidence of damages. All such records are hearsay, they have failed to identify any foundational witnesses, and such reports are generally inadmissible without a causal connection. Defendants rely on the arguments and citation in the individual motions for further support.

### B. Unavailable Witnesses

Six (6) witnesses will not be available to testify at the trial, and the parties have agreed, in principal, to utilize transcripts of prior testimony. Those witnesses are: Michael Hosten, Michael Bernard, and William Darko, who are all deceased, were eyewitnesses to the murder and surrounding events, and testified in the Motion to Suppress and/or the criminal trial in 1987. Kenneth Whitted and LeVonne Dixon are both out of state; while neither were eyewitnesses, they both provided evidence in the investigation and they both testified in the 1987 proceedings; and finally the Defendant Leonard Scammons is unavailable as a result of a serious medical

14

issue. He testified in the 1987 proceedings, the 1992 Motion for a New Trial, and had a video deposition taken in connection with this matter. The parties are conferring and attempting to jointly designate the portions of the transcripts which will be offered by each party. To the extent that the parties are unable to agree, it is anticipated motions may be filed with the Court on some or all of the transcripts.

## IV. ADDITIONAL MATTERS FOR THE COURT'S CONSIDERATION

### A. Motion to Sequester

The Defendants will file an assented to motion to sequester all non-expert, non-party witnesses, with the exception of Schand's immediate family members. Further the parties agree that once a witness has testified the sequestration order can be lifted.

### B. Scammons Absence.

The Defendants are seeking a brief statement relative to Scammons' inability to be present be read to the jury. The parties are attempting to agree on the wording of the statement.

Respectfully submitted,

THE DEFENDANT,
Raymond Muise,
By his attorney,

*/s/ Lisa C. deSousa*
Lisa C. deSousa, Esq., BBO #546116
City of Springfield Law Department
1600 E. Columbus Ave., 2nd Floor
Springfield, MA 01103
Tel:    (413) 886-5205
ldesousa@springfieldcityhall.com

15

| | |
|---|---|
| THE DEFENDANT,<br>Leonard Scammons,<br>By his attorney,<br><br>*/s/ Kevin Coyle*<br>Kevin Coyle, Esq., BBO#255040<br>1299 Page Boulevard<br>Springfield, MA 01104<br>Tel:   (413) 787-1524<br>attycoyle@aol.com | THE DEFENDANT,<br>Elmer McMahon,<br>by his attorney,<br><br>*/s/ Austin M. Joyce*<br>Austin M. Joyce, Esq., BBO #255040<br>Reardon, Joyce & Akerson PC<br>4 Lancaster Terrace<br>Worcester, MA  01609<br>Tel:   (508) 754-7285<br>ajoyce@rja-law.com |

THE DEFENDANT,
Michael Reid,
By his attorneys,

*/s/ Kathleen E. Sheehan*
Kathleen E. Sheehan, Esq., BBO #456910
Jeremy Saint Laurent, Esq. BBO $698682
City of Springfield Law Department
1600 E. Columbus Ave., 2nd Floor
Springfield, MA 01103
Tel:   (413) 787-6085
ksheehan@springfieldcityhall.com
jsaintlaurent@springfieldcityhall.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within motion in limine was this day served upon the parties via the Federal Court's ECF Notice and delivery System. I am unaware of any party who is a non-registered participant and therefore electronic filing is the sole means of this document.

SIGNED under the pains and penalties of perjury.

Dated: August 30, 2019                          */s/ Lisa C. deSousa*
                                                                Lisa C. deSousa, Esq.