# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

MARK SCHAND, et al.,

    Plaintiff,

v.

CITY OF SPRINGFIELD, et al.,

    Defendants.

Case No. 3:15-cv-30148

The Honorable William G. Young

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REIMBURSEMENT OF COSTS, ATTORNEYS' FEES, AND OTHER EXPENSES REASONABLY INCURRED IN LITIGATING PLAINTIFF'S 42 U.S.C. §1983 SUIT AGAINST DEFENDANTS

Pursuant to 42 U.S.C. §1988, Plaintiff Mark Schand respectfully submits this Memorandum of Law in Support of his Motion for Reimbursement of Attorneys' Fees, Costs, and Other Expenses Reasonably Incurred in litigating Plaintiff's federal civil rights suit. Plaintiff and his family[1] have been represented by White & Case LLP ("White & Case") since the summer of 2014. As set forth below, Plaintiff respectfully requests a fee award of $2,778,769.50, which represents only those fees accumulated by White & Case in preparation for trial and at trial itself, fees which will be reinvested into White & Case's global pro bono program.[2] Plaintiff also respectfully requests an award of costs totaling $212,682.30, representing the total costs that White & Case has incurred during the five years that it has represented Mr. Schand in this complex federal litigation.

---

[1] White & Case was initially retained to represent Mr. Schand, his wife Mia Schand and his three sons, Kiele Schand, Mark Schand Jr., and Quinton Schand. Defendants were granted summary judgment as to Mia, Kiele, Mark Jr., and Quinton's claims.

[2] White & Case, "Global Citizenship: Our Global Pro Bono Practice, https://www.whitecase.com/global-citizenship/our-global-pro-bono-practice.

Since being retained as counsel on a pro bono basis in 2014, White & Case has accrued nearly $7 million in attorneys' fees and costs and expenses, all in pursuit of its effort to obtain monetary damages in connection with the injustice that had been done to Mr. Schand and his family. Declaration of Joshua Weedman ("Decl.") ¶¶ 36-40, Ex. B. Over the past five years, over thirty attorneys, summer associates, and support staff at the firm have worked on Mr. Schand's case in some capacity, from undertaking the detailed legal and factual inquiry necessary to file the complaint, through two years of fact and expert discovery, taking and defending twenty-six depositions, successfully opposing Defendants' motion for summary judgment, engaging in extensive pretrial briefing, including opposing Defendants' sixteen motions in limine, conducting a two-week trial, and ultimately winning a successful jury verdict of $27,127,000 for Mr. Schand. Decl. ¶¶ 4, 8, 13, 19, 21, 27-29, 34.

Plaintiff now seeks costs, expenses, and attorneys' fees. With respect to costs and expenses, Plaintiff is seeking the full amount of its "hard costs" and expenses in litigating the case. The extent of those costs are described in further detail in the Weedman Declaration, but they primarily include those costs associated with the two-week trial in Springfield, Massachusetts, which required the relocation of attorneys and support staff from New York and Boston to try the case. Decl. ¶ 40, Ex. E.

With respect to attorneys' fees, because White & Case agreed to represent Mr. Schand as part of the firm's pro bono practice and therefore had no expectation at the time of its engagement that it necessarily would recoup fees and costs, and because of the prevailing requirement in this jurisdiction that attorneys' fees be reasonable, Plaintiff is only seeking those fees incurred ***after*** the trial date was scheduled by this Court and it became clear that a settlement with Defendants was unlikely. As a result, Plaintiff is forgoing over **$4 million (or 60%)** of the fees that have been

accrued by White & Case over its five-year representation of Mr. Schand. Instead, Plaintiff only seeks attorneys' fees in the amount of $2,778,769.50 for the over 3,000 hours White & Case spent on Mr. Schand's case from June 18, 2019—the date of the final pretrial conference—through September 20, 2019, the last date of trial. Decl. ¶ 36, Ex. C. Notably, during that period, White & Case, on behalf of Mr. Schand, made repeated offers to mediate the dispute. Decl. ¶ 23. Defendants (through the City of Springfield) declined to do so.[3]

If Plaintiff's fee request set forth herein is awarded, White & Case intends to reinvest such fees back into White & Case's pro bono practice so that the firm can continue to take on complex and costly pro bono engagements.

## STATEMENT OF FACTS

The Court is intimately familiar with the facts of this case. As a result of a nearly two-month investigation during which Defendants used impermissibly suggestive photo identification procedures and failed to investigate alternative suspects who they had information about, Mr. Schand was arrested on October 29, 1986 for the September 2, 1986 robbery of Charles Stokes and murder of Victoria Seymour. Following his arrest, Defendants continued to use unduly suggestive photo arrays and a lineup to shore up eyewitnesses' certainty that Mr. Schand was the perpetrator. Mr. Schand was tried and found guilty in November 1987 and was sentenced to life in prison without the possibility of parole. Over the intervening years, evidence came to light that Mr. Schand's trial counsel did not receive documents pointing to other suspects that were in the case file for the After Five Shooting, a case file that resided within a filing cabinet at the Springfield

---

[3] It is worth noting that over three years ago—on April 1, 2016—White & Case, on behalf of Mr. Schand and his family, sent Defendants' counsel a letter offering to settle the matter against the City of Springfield and individual Defendants for $20 million. See Decl. ¶ 6, Ex. A, April 1, 2016 Letter from J. Weedman to E. Pikula et al. White & Case noted at that time that "as Defendants are likely aware, recent awards to wrongfully-convicted civil rights plaintiffs have often exceeded $1 million per year that the plaintiff spent in prison (which in this case would result in over $27 million)." Id. Indeed, that is precisely the verdict that the jury rendered following trial. White & Case never even received the courtesy of a response to that letter.

Police Department. Then, Centurion Ministries, a non-profit organization hired by Mr. Schand, found three witnesses—Tracy Fisher, Randy Weaver, and Martin Smith—who were all from Hartford, were familiar with Mr. Schand, were present at the scene of the After Five Shooting, and stated unequivocally that Mr. Schand was not present at the scene of the shooting. That, coupled with recantations from eyewitnesses who had identified Mark Schand, led Mr. Schand's attorneys to file a motion for new trial. Mr. Schand was granted a motion for new trial based on newly discovered evidence in 2013. The District Attorney then issued a *nolle prosequi*.

White & Case was approached with the opportunity to represent Mr. Schand and his family in a Section 1983 civil rights suit in the summer of 2014 and ultimately agreed to represent Mr. Schand and his family in their suit against the City of Springfield, as well as the individual police officers. Decl. ¶ 3. After nearly a year of investigation, White & Case filed the complaint in the above-captioned proceeding on August 20, 2015. Decl. ¶ 4. The complaint alleged eighteen claims against the City of Springfield, Hampden County, the City of Hartford, Former Springfield Police Detectives McMahon, Scammons, Muise, Reid, Assad, Fleury, McNulty, and unknown officers and supervisors.[4] Decl. ¶ 4. White & Case attorneys collected, organized, and examined a significant volume of documentary evidence from 1986 onwards in order to compile the information alleged in the Complaint. Decl. ¶ 4.

Over the next two years, parties engaged in extensive fact and expert discovery. The parties collectively produced nearly 30,000 pages of documents. Decl. ¶¶ 8-9. Plaintiffs responded to interrogatories and requests for production, and served their own requests for production and interrogatories on the City of Springfield and the individual defendants. Decl. ¶ 9. In order to effectively present Plaintiffs' claims, White & Case retained two experts: Dr. Antoinette

---

[4] Hampden County, detectives Fleury and McNulty, and the unidentified Doe Defendants were voluntarily dismissed by Plaintiffs during fact discovery. The court granted the City of Hartford's motion to dismiss.

Kavanaugh, a forensic psychologist, and Mr. Lou Reiter, an expert in police practices. Decl. ¶ 10. Both of those experts examined Mr. Schand's case and authored reports. Decl. ¶ 10. White & Case took and defended twenty-six (26) depositions—all of which required travel from New York to Springfield, Boston, and Hartford—including depositions of Defendants' two expert witnesses, and six corporate representative depositions under FRCP 30(b)(6), several of which were only necessary because the City's initial designee had not been prepared on the noticed topics. Decl. ¶ 8.

On September 20, 2017, Defendants Assad, Muise, Reid, McMahon, and Scammons, along with the City of Springfield, filed motions for summary judgment.[5] Decl. ¶ 12. White & Case filed an opposition on Plaintiffs' behalf to those motions on November 17, 2017. Decl. ¶ 13. A hearing was held on April 26, 2018. Decl. ¶ 16. Over one year later, on May 6, 2019, Judge Ponsor entered an order and memorandum granting summary judgment on all counts except Count I (Unduly Suggestive Identification), Count VI (Conspiracy under §1983), and Count XI (Common Law Malicious Prosecution) as to Defendants McMahon, Reid, Muise, and Scammons. Decl. ¶ 19. White & Case then filed a motion for reconsideration on Plaintiffs' behalf on the grant of summary judgment in favor of the City of Springfield as to municipal liability under Monell v. Department of Social Services, 463 U.S 658 (1978), and on the grant of summary judgment in favor of Defendant McMahon as to the claim of suppression and fabrication of exculpatory evidence. Decl. ¶ 20.

On June 18, 2019, White & Case, on behalf of Plaintiff, participated in a final pretrial conference with the Court and defense counsel. Decl. ¶ 22. Prior to the pretrial conference, White

---

[5] Defendant McMahon filed his own motion for summary judgment, separate from the City of Springfield and other individual defendants.

& Case and defense counsel jointly drafted a pretrial memorandum. Decl. ¶ 21. At that time, Plaintiff's motion for reconsideration was denied. Decl. ¶ 22.

Over the next few months in preparation for trial, White & Case attorneys engaged in numerous pretrial activities. They compiled a jointly-offered list of exhibits, as well as other exhibits that were marked for identification; had numerous meet and confers with defense counsel on the exhibits and other issues leading up to trial; drafted and filed three motions in limine, as well as proposed jury instructions; and filed oppositions, within six days of receipt, to Defendants' ***sixteen*** motions in limine. Decl. ¶¶ 21, 24-26, 28. They also prepared for the direct and cross-examinations of over sixteen witnesses, thirteen of whom ultimately testified at trial, as well as designated prior testimony for six witnesses who were declared unavailable. Decl. ¶¶ 24, 30-31.

During this time, White & Case also made numerous settlement overtures on Mr. Schand's behalf to the City of Springfield, which despite being dismissed from the lawsuit still insisted on controlling the settlement discussions for the individual police officers. Decl. ¶ 23. Often times, White & Case's settlement demands on Mr. Schand's behalf would not be responded to for weeks, forcing counsel to focus on costly pretrial preparation. Decl. ¶ 23. White & Case also made multiple requests to participate in mediation, which the Defendants either rejected or ignored. Decl. ¶ 23.

Trial began in Springfield, Massachusetts on September 9, 2019, and continued for nine days until September 20, 2019. The White & Case team in Springfield consisted of eight attorneys, one legal assistant, and one legal support technician. Decl. ¶ 38. White & Case called thirteen live witnesses in Plaintiff's affirmative case, including Defendants McMahon, Muise and Reid, and had the designated prior testimony of six witness, including Defendant Scammons, read into the record. Decl. ¶¶ 30-31. On September 20, 2019, the jury returned a verdict in favor of Mr. Schand

for compensatory damages of $27,127,000. Decl. ¶ 34. The Court issued a judgment on September 30, 2019 for the amount of $26,677,000, reducing the award by the amount that Plaintiff had previously recovered in a suit against the Commonwealth of Massachusetts. Decl. ¶ 35.

## STANDARD OF REVIEW

Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party [in a § 1983 civil rights suit] . . . a reasonable attorney's fee as part of the costs" to which a prevailing party is ordinarily entitled under Fed. R. Civ. P. 54(d). 42 U.S.C. § 1988(b). The purpose of § 1988 is to "ensure effective access to the judicial process for persons with civil rights grievances . . . not to serve as full employment or continuing education programs for lawyers and paralegals." Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992). While the statute is "couched in permissive terminology," awarding fees in favor of prevailing civil rights plaintiffs is "virtually obligatory." [6] Gay Officers Action League v. P.R., 247 F.3d 288, 293 (1st Cir. 2001); see also De Jesus Nazario v. Rodriguez, 554 F.3d 196, 200 (1st Cir. 2009).

## ARGUMENT

### I.   The Costs And Expenses Sought By White & Case Are Reasonable

It is well-settled that successful 1983 plaintiffs are entitled to recover all reasonable costs and expenses incurred in litigating a particular matter. Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983) (affirming award of costs such as "transportation, lodging, parking, food and telephone expenses"); Rosie D. v. Patrick, 593 F. Supp. 2d 325, 334 (D. Mass. 2009) (awarding Plaintiffs' counsel $221,305.82 in costs, finding that internal printing expenses and claims for travel and meals are "entirely reasonable").

---

[6] It is beyond dispute that Mr. Schand is a "prevailing party" within the meaning of § 1988(b). A plaintiff is a "prevailing party" for attorney's fees purposes if they "succeed on any significant issue in litigation which achieves some benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

Here, Plaintiff seeks costs in the amount of $212,682.30 which represent reasonable costs and expenses incurred by White & Case throughout the duration of the representation of Mr. Schand and his family.[7]  Decl. ¶ 40, Ex. E.  During a two-year fact discovery period, counsel traveled to Springfield, Boston, and Hartford for twenty-six depositions.  Decl. ¶ 8.  Each visit incurred travel and lodging expenses, in addition to costs for a stenographer, in some cases a videographer, and printing and shipping costs.  Decl. ¶ 8.  Counsel also sustained significant printing and shipping costs related to opposing defendants' summary judgment motion and numerous other motions prior to trial.  Decl. ¶¶ 8, 16, 40.

During trial, White & Case rented office space in Springfield, which counsel occupied from September 5, 2019 through September 21, 2019, and rented hotel rooms for their trial team which included eight attorneys, one legal assistant, and one litigation support technician.  Decl. ¶ 40.  White & Case also incurred reasonable meal expenses while in Springfield leading up to and during the trial.  Decl. ¶ 40.  Throughout trial, counsel incurred printing costs, including costs related to printing binders of exhibits for the Court, and the jury.  Decl. ¶ 40.  All of these expenses were reasonable and are the exact type of out-of-pocket expenses that White & Case charges its paying clients.  Decl. ¶ 40.  Thus, Plaintiff is entitled to $212,682.30 in costs and expenses incurred by White & Case during its representation of Mr. Schand and his family.

## II.     The Fees Sought By White & Case Are Reasonable

This jurisdiction applies the "lodestar" test to determine whether the attorneys' fees requested are reasonable, which is a calculation of the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433

---

[7] Plaintiff is not seeking over $50,000 in expert fees incurred in this case because they are not recoverable for a Section 1983 action under 42 U.S.C. § 1988. However, Plaintiff is seeking the costs of travel expenses and lodging for Mr. Reiter and Dr. Kavanaugh, as is permitted under 28 U.S.C. §1821. See W. Va. Hosps. v. Casey, 499 U.S. 83, 102 (1991) ("When experts appear at trial, they are of course eligible for the fee provided by §1920 and §1821[.]").

(1983); Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997) ("The lodestar method is the strongly preferred method by which district courts should determine what fees to award prevailing parties in actions that fall within the ambit of section 1988.").

Once the lodestar figure is calculated, the fee may be adjusted in consideration of a number of factors, including: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Hensley v. Eckerhart, 461 U.S. 424, 429 n.3 (1983).

Although Plaintiff could seek its full amount of fees, undersigned counsel has chosen to forgo nearly four years' worth of fees, in favor of limiting the recoverable fees to a team of nine attorneys for all work undertaken between June 19, 2019 and September 20, 2019. Decl. ¶¶ 36-39. Plaintiff's total lodestar in this matter is $2,778,769.50, that is, the reasonable amount of time that nine attorneys who worked on Mr. Schand's case spent preparing for trial, litigating Mr. Schand's case at trial, and achieving successful results multiplied by the reasonable hourly rate that is charged in New York for lawyers of similar experience and expertise. Decl. ¶¶ 36-39, Exs. C, D. Such a drastic reduction—coupled with the resounding success of the verdict—renders the adjusted lodestar reasonable and, Plaintiff respectfully submits, it should therefore not be subject to further reduction. See Hutchinson v. Patrick, 683 F. Supp. 2d 121, 128 (D. Mass. 2010) (noting that "[f]or a case of this importance and difficulty, with the extremely beneficial results for this vulnerable class of citizens" plaintiffs' fee request was "eminently fair" and applauding plaintiffs'

counsel for their "laudable restraint" in seeking fees); Farrar v. Hobby, 506 U.S. 103, 114 (1992) ("Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award under Hensley.").

### A. White & Case Seeks Compensation For A Reasonable Number Of Hours

Plaintiff is seeking fees for hours billed only by nine White & Case attorneys from the period between June 19, 2019 and September 20, 2019, after trial was scheduled and Defendants rejected any offer to mediate the dispute. In doing so, counsel have exercised billing judgment with respect to their fee application, as they are obligated to, and have thus excluded almost $4 million in fees and nearly 5,500 hours of work undertaken by over 30 attorneys over nearly 4 years. See Hensley, 461 U.S. at 434 ("Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission[.]"). Moreover, in assessing the reasonableness of fee applications, courts should consider the novelty and complexity of the case. See Lipsett v. Blanco, 975 F.2d 934, 939 (1st Cir. 1992) (declining to reverse district court's award of attorneys' fees and noting that "a litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case" and the "retaining of multiple attorneys in a significant, lengthy . . . case . . . is understandable and not a ground for reducing the hours claimed").

Rosie D. v. Patrick, 593 F. Supp. 2d. 325 (D. Mass. 2009) is instructive. In that case, which also was a pro bono federal civil rights action undertaken by the law firm WilmerHale, a firm of comparable size to White & Case, the court found the claimed hours of work to be reasonable, particularly in light of the fact that counsel voluntarily eliminated more than 5,200 hours contributed by eighty lawyers. Id. at 332. The court stated that any arguments in support of

further reductions were "entirely unpersuasive and particularly inappropriate in light of the substantial number of hours that Plaintiffs have already voluntarily deducted from their petition." Id.  Moreover, in declining to reduce WilmerHale's hours further, the court noted that it was "significant" that defendants "litigated this case to the hilt"; discovery was "very contentious and resulted in numerous motions, almost all of which were resolved in Plaintiffs' favor . . . .[and] [t]he trial was protracted and preparation of the numerous lay and expert witnesses reasonably required considerable time."  Id.

Here, Plaintiff has voluntarily agreed to reduce the lodestar by 5,500 hours of time billed during four years, and is only seeking fees for hours billed by White & Case in connection with direct preparation for trial.  Decl. ¶¶ 36-38.  And, similar to the plaintiffs in Rosie D., Plaintiff here is seeking fees that directly resulted from Defendants' refusal to mediate and instead burden him and his family by going to trial, after which a $27 million verdict was rendered against the individual police officers.  Decl. ¶¶ 36-38.  Given Plaintiff's voluntary reduction of 5,500 hours of time billed to this matter, equaling around $4 million, as well as the highly successful verdict in favor of Mr. Schand after a trial that could have been avoided, the amount of hours billed by nine attorneys preparing for trial for a three-month period should be found to be reasonable.  Decl. ¶¶ 36-39, Exs. C, D.  Courts have awarded law firms attorneys' fees for their successful representation of clients in other pro bono cases as well.  See, e.g., Hutchinson, 683 F. Supp. 2d at 128 (awarding plaintiffs attorneys' fees in the amount of $775,136 and expenses in $10,987 to counsel Wilmer Hale and noting that counsel's voluntary reduction in fees rebutted "any defense objections for over-lawyering or excessive hours"); L.H. v. Schwarzenegger, 645 F. Supp. 2d 888, 903 (E.D. Cal. 2009) (awarding plaintiffs, a class of juvenile parolees who were awarded injunctive relief in an action challenging the parole revocation process as violating due process and the mandates of the

ADA, $4,421,173.46 in fees and $349,034.12 in costs to counsel Bingham McCutchen LLP and two other organizations); Marisol A. v. Giuliani, 111 F. Supp. 2d 381, 401-03 (S.D.N.Y. 2000) (awarding attorneys' fees and expenses totaling $5,835,116.78, of which counsel Schulte Roth & Zabel LLP received $996,642.425 in fees $51,926.69 in costs).

### B. White & Case Seeks Reasonable Hourly Rates

The hourly rates for the nine attorneys that comprised White & Case's team from June 19, 2019 through September 20, 2019 that are set forth in the Weedman Declaration are reasonable.

As the First Circuit noted in Hutchinson v. Patrick, "[t]here is no universal market rate for legal services." 636 F.3d 1, 16 (1st Cir. 2011). Rather, the First Circuit has noted that courts may exercise discretion in determining the relevant market in which to analyze the reasonableness of the hourly rates. U.S. v. One Star Class Sloop Sailboat, 546 F.3d 26, 38 (1st Cir. 2008) ("Reasonable hourly rates will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria."). To that end, "[w]hen a party recruits counsel from outside the vicinage of the forum court, that court may deem the 'relevant community' to be the community in which the lawyer maintains his or her principal office." Id. at 40. In determining whether certain hourly rates are reasonable, this jurisdiction recognizes some generally accepted guideposts, such as: (1) the rate that a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value; and that (2) data evidencing the prevailing market rate for counsel of comparable skill and experience provides helpful guidance. See id. at 40; Blum v. Stevenson, 465 U.S. 886, 895 (1984); see also Tomazzoli v. Sheedy, 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm.").

As noted above, Plaintiff seeks fees only for the 3-month period spent preparing for and conducting the trial. Decl. ¶¶ 36-38, Ex. C. White & Case treated this case as they would any other matter in which it was retained, approaching the case with the utmost professionalism and zealousness. Moreover, White & Case's hourly rates are consistent with those market rates and billing practices for global U.S. firms of comparable size and expertise. Decl. ¶ 39, Ex. D. Although White & Case does not specialize in Section 1983 litigation, the firm has a well-regarded trial practice, and each of the attorneys on the team have trial experience. See Rosie D. v. Patrick, 593 F. Supp. 2d at 330 ("[T]he strongest and most persuasive authority is that an attorney representing a plaintiff in a civil rights action should get whatever his or her normal hourly rate is, assuming that it lies under the broad umbrella of what is 'reasonable.' Certainly, an attorney should not expect to receive less for doing important work on behalf of vulnerable plaintiffs ...."). Thus, White & Case's rates are reasonable, and Plaintiff should be entitled to fees for the full rates that the firm would charge any paying client. See id.; Blum, 465 U.S. at 895; Tomazzoli, 804 F.2d at 98.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that this Motion for Reimbursement of Attorneys' Fees, Costs, and Other Expenses Reasonably Incurred should be granted and that this Court should enter an order requiring Defendants to reimburse Plaintiff's Counsel for $212,682.30 in costs and other expenses and $2,778,769.50 in attorneys' fees related to litigating this case.

Dated: October 15, 2019

By: */s/ Heather K. McDevitt*
Heather K. McDevitt (*pro hac vice*)
Joshua D. Weedman (*pro hac vice*)
Jacqueline L. Chung (*pro hac vice*)
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Phone: (212) 819 8200
Fax: (212) 354 8113
hmcdevitt@whitecase.com
jweedman@whitecase.com
jacqueline.chung@whitecase.com

Kevin Adam, BBO # 684955
WHITE & CASE LLP
75 State Street, 24th Floor
Boston, MA 02109
Phone: (617) 979 9300
Fax: (617) 979 9301
kevin.adam@whitecase.com
*Counsel for Plaintiff Mark Schand*

## **CERTIFICATE OF SERVICE**

I, Heather K. McDevitt, Esq., herby certify that a correct copy of the forgoing brief was filed electronically on October 15, 2019.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

>/s/  *Heather K. McDevitt*
>Heather K. McDevitt