UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
MARK SCHAND, MIA SCHAND,         )
MARK SCHAND JR.,                 )
QUINTON SCHAND, and              )
KIELE SCHAND                     )
                                 )
                 Plaintiffs,     )
                                 )
        v.                       )      CIVIL ACTION
                                 )      NO. 15-30148-WGY
ELMER MCMAHON, RAYMOND P. MUISE, )
MICHAEL REID, and                )
ERIC SCAMMONS, as representative )
of the estate of LEONARD SCAMMONS, )
                                 )
                 Defendants.     )
_____)

YOUNG, D.J.                             September 16, 2020

**MEMORANDUM AND ORDER**

## I.    INTRODUCTION

Through twenty-seven years in prison for murder, plaintiff

Mark Schand ("Schand") had maintained his innocence.  In 2013,

when new evidence came to light, Schand's conviction was vacated

and he was released.  In 2015, Schand commenced this civil

action against individual police officers he accused of

misconduct: Elmer McMahon, Leonard Scammons,[1] Raymond Muise and

_____

[1] Pursuant to Fed. R. Civ. P. 25(a), this Court allows the
substitution of Leonard Scammons for his estate.  See ECF No.
308.  This decision will refer, however, to Leonard Scammons
when relevant.

Michael Reid (jointly the "Defendants" or the "Police Officers").[2]  On September 30, 2019, a jury found in favor of Schand, against the Police Officers, and awarded him $27,127,000 in compensatory damages.  ECF No. 243.  The Police Officers filed motions for new trial, judgment as matter of law, remittitur, and attorney's fees.  ECF Nos. 245, 249, 251, 254, 256, 258, 260, 262.  On March 16, 2020 the Court denied all of the motions for judgment as matter of law, ECF Nos. 251, 254, 260.[3]  Tr. Mot. Hr'g. 35.

On the motions for new trial, however, two issues were taken under advisement.  See Pl.'s Resp. Court's Inquiries March 16, 2020 Hr'g ("Pl.'s Resp.") 1, ECF No. 304; Defs.' Resp. Court's Inquiries March 16, 2020 Hr'g ("Defs.' Resp.") 1, ECF No. 307; Tr. Mot. Hr'g.  First, whether a prior judicial decision by Judge Ponsor barred the use of the Scammons Report at trial, and if so, whether this Court erred by allowing its use at trial.[4]  Defs.' Resp.; Pl.'s Resp.; see Judge Ponsor

---

[2] The plaintiffs' original complaint named a number of defendants, some of them ultimately dismissed voluntarily or by court order.  See Complaint ("Compl."), ECF No. 1; see also ECF Nos. 41, 49, 60, 81, 135, 157.

[3] The Court DENIES the remittitur, ECF No. 258, as indicated to the parties at the post-trial motion hearing.  See Tr. Post-trial Mot. Hr'g ("Tr. Mot. Hr'g") 37, ECF No. 309.

[4] The defendants Scammons and Reid memorialized four interviews in a police activity report dated September 24, 1986 (the "Scammons Report").  Defs.' Statement Material Facts

Decision.   Second, whether this Court erroneously used "a reasonable police officer" standard while instructing the jury on the due process violation claim.   Pl.'s Resp.; Defs.' Resp.

## A.   Factual Background

In 1987, Schand was convicted for the murder of Victoria Seymour.   Compl. ¶ 372.   Schand denied committing the crime and sought review of his conviction several times based on inconsistencies in the investigation, including allegedly doctored and suppressed police reports, coerced and unreliable witness statements, and improper identification procedures.   Id. ¶¶ 2-4.   In 1992, Schand was denied a motion for new trial by Massachusetts Superior Court Justice John F. Murphy, who analyzed the Scammons Report at length.   Defs.' SOF, Ex. 12, Findings Fact & Rulings Law Defs.' Mot. New Trial ("Justice Murphy Decision"), ECF No. 93-12.   In 2013, Superior Court Justice Kinder granted Schand's motion for a new trial because new witnesses testified that Schand was not present near the scene of the shooting, and another witness who had testified against Schand recanted his initial testimony that identified Schand as the shooter.   Compl. ¶ 4; Defs.' SOF, Ex. 36, Am.

---

("Defs.' SOF"), ECF No. 93; id., Ex. 4, 4J Activity Report (Sept. 24, 1986), ECF No. 93-4.   That report is relevant because the second page was never given to Schand's defense attorney, and it contained possible exculpatory evidence.   See Mem. & Order Regarding Defs.' Mots. Summ. J. & Mot. Strike (May 6, 2019) ("Judge Ponsor Decision") 26-27, ECF No. 135.

Order New Trial ("Justice Kinder Decision"), ECF No. 93-36.  A few days later, the prosecutor issued a nolle prosequi.[5]

Schand and his family members (jointly the "Plaintiffs") sued the Police Officers in order to recover damages from Schand's wrongful conviction and imprisonment for 27 years. Compl.  The Police Officers denied any negligence or misconduct in connection with Schand's conviction.  See generally ECF No. 94.

## B.  Procedural History

The Plaintiffs filed the complaint on August 20, 2015.  The Police Officers filed motions for summary judgment, and Judge Ponsor partially allowed them.  ECF Nos. 86, 92; see also Judge Ponsor Decision.

After the Judge Ponsor Decision, the case was reassigned to this Court.  ECF No. 136.  The Plaintiffs filed a motion for reconsideration of the partially allowed motion for summary judgment, which the parties briefed.  ECF No. 144; Opp'n Mot. Recons. ("Defs.' Opp'n Mot. Recons."), ECF No. 150.  On June 18, 2019, this Court partially denied the motion for

---

[5] The nolle prosequi indicated, as the basis for its issuance, that the "time elapsed since the date of offense, availability of witnesses and the continued examination of newly discovered evidence do not allow for the continued prosecution of the case at this time."  Defs.' SOF, Ex. 37, Nolle Prosequi ("Nolle Prosequi"), ECF No. 93-37.

reconsideration, taking the issue of collateral estoppel under advisement.  ECF No. 157.

A trial followed and the jury found in favor of the Plaintiffs against the Police Officers.  ECF No. 243.  The parties filed several post-trial motions, and on March 16, 2020 this Court held a hearing on those pending motions.  See ECF Nos. 245, 249, 251, 254, 256, 258, 260, 262, 301.  This Court took two issues -- collateral estoppel and the jury instruction -- under advisement.  Pl.'s Resp. 1.; Defs.' Resp. 1.  Schand and the Police Officers have fully briefed the Court's inquiries.  For the reasons given below, the Police Officers' motions for a new trial and motion for remittitur are each DENIED.  The motion for attorney's fees and costs is ALLOWED in the sums explained below.

## II.  ANALYSIS

During Schand's wrongful conviction trial, this Court allowed the use of the Scammons Report as an overt act for the conspiracy claim.[6]  The Police Officers assert this was error because Judge Ponsor's Decision barred the use of the Scammons Report.  Defs.' Resp. 3-9.  The Court disagrees.  Judge Ponsor did not bar the use of the Scammons Report at trial as an overt

---

[6] Tr. Jury Trial Day 2 (Sept. 10, 2019) 35, ECF No. 284; Tr. Jury Trial Day 9 (Sept. 20, 2019) ("Trial Day 9 Tr.") 37-40, ECF No. 291.

act of the conspiracy claim.  Although Judge Ponsor erroneously ruled that collateral estoppel applied to Schand's conviction, he correctly ruled that the record did not provide adequate support for the suppression and fabrication of evidence claims.

This Court correctly used "a reasonable police officer" standard when instructing the jury on the improper identification procedures under the civil rights claim.[7]  The Police Officers' contention that the correct standard is "more than mere negligence" is meritless.  Defs.' Resp. 1.

## A.   Collateral Estoppel

Judge Ponsor allowed McMahon's motion for summary judgment ruling that the claims for the fabrication and suppression of evidence were barred by collateral estoppel, and that the evidence did not support a verdict that McMahon was responsible for "the whiteout on the report or for the failure to turn both pages of the report over."  Judge Ponsor Decision 92, 95.

Schand asserts that Judge Ponsor did not bar the use of the Scammons Report and that he wrongly barred from re-litigation the claims for suppression and fabrication of evidence.  Pl.'s Resp. 4.  The Police Officers contend that Judge Ponsor linked the Scammons Report with the -- correctly -- barred suppression and fabrication of evidence claims, and that the formulation of

---

[7] See Trial Day 9 Tr. 30-33.

the conspiracy claim referred exclusively to the "unduly
suggestive identification procedures.".  Defs.' Resp. 3-5.  They
assert that a new trial is necessary because this Court allowed
the jury to make reasonable inferences as to the conspiracy
claim from the Scammons Report, misled the jury by indicating
that Schand's conviction was vacated, and too broadly framed the
issues to be tried, including the Scammons Report.  Id. at 4, 7,
9.

This Court never ruled on the collateral estoppel
arguments, until now.  See Electronic Clerk's Notes (June 18,
2019), ECF No. 157; see also Mot. Hr'g. Tr. (June 18, 2019) 18-
19, ECF No. 281; Tr. Jury Trial Day 8 (Sept. 19, 2019) ("Trial
Day 8 Tr.") 171, ECF No. 290.  This Court's ruling, however,
does not have any impact whatsoever on the claims tried.
Although Judge Ponsor mistakenly barred the claims because of
collateral estoppel -- as explained bellow -- he correctly
granted summary judgement because the evidence did not support a
finding against McMahon.[8]

### 1.  Nolle Prosequi and New Trial

Justice Kinder, in 2013, granted Schand's motion for a new
trial.  Compl. ¶ 4; Justice Kinder Decision.  A few days later,

---

[8] The parties do not raise any arguments against this
particular reasoning on Judge Ponsor's Decision, and this Court
will not address them sua sponte.

the Commonwealth of Massachusetts issued a <u>nolle prosequi</u>.
Defs.' SOF, Ex. 37, Nolle Prosequi ("Nolle Prosequi"), ECF No.
93-37.  <u>Nolle prosequi</u> does not vacate a judgement; it means
only "we shall no longer prosecute." <u>Blue</u> v. <u>Medeiros</u>, 913 F.3d
1, 5 n.6 (1st Cir. 2019).  In contrast, a "new trial has the
effect of vacating the former judgment, and the parties are left
in the same situation as though no trial had ever taken place."
<u>United States</u> v. <u>Recio</u>, 371 F.3d 1093, 1106 n. 11 (9th Cir.
2004) (citing with approval <u>United States</u> v. <u>Ayres</u>, 76 U.S. 608,
610 (1869)).

The Justice Kinder Decision granting the motion for a new
trial had the effect of vacating Schand's conviction.  This
Court correctly stated during trial that Schand's conviction was
vacated.  The Police Officers' argument that Schand has not
filed a motion to vacate or to withdraw the judgment is beside
the point, since such procedural niceties from Schand are not
required.  Their suggestion that this Court misled the jurors by
referring to Schand's conviction as vacated is likewise off the
mark.

### 2.  Vacated Judgment

When a conviction is vacated there "is no final
determination of the facts" so it cannot be given "preclusive
force either as a matter of collateral estoppel or as a matter
of the law of the case." <u>Jackson</u> v. <u>Coalter</u>, 337 F.3d 74, 85

(1st Cir. 2003); see also No E.-W. Highway Comm., Inc. v. Chandler, 767 F.2d 21, 24 (1st Cir. 1985).

The Police Officers argue that Jackson is not applicable here because "[u]nlike the plaintiff in Jackson, the final judgment issued by the [Supreme Judicial Court] against Mr. Schand has not been withdrawn or vacated and is still being cited as precedent." Defs.' Opp'n Mot. Recons. 11 (citing Johnson v. Mahoney, 424 F.3d 83, 96 (1st Cir. 2005)). Judge Ponsor, following Johnson, reached the conclusion that issues previously litigated were precluded from re-litigation.[9] Judge Ponsor Decision 77-78.

In Johnson, the plaintiff was convicted, later nolle prossed, and he subsequently brought a section 1983 claim. 424 F.3d at 84. The Johnson court held that collateral estoppel prevented the section 1983 claim because "issues decided in criminal prosecutions may preclude their later relitigation in a civil action." Id. at 94 (citing Aetna Cas. & Sur. Co. v. Niziolek, 395 Mass. 737 (1985)). Johnson, however, is distinguishable from Schand's case because the court in Johnson

_____

[9] Judge Ponsor relied on "Judge Murphy's memorandum regarding Schand's 1992 motion for new trial, [] Justice Greany in the SJC opinion affirming Judge Murphy's decision, and [] Judge Frank Freedman in the subsequent habeas proceeding in federal court," to bar re-litigation of counts II (suppression of exculpatory evidence) and III (fabrication of evidence). Judge Ponsor Decision 92, 94.

indicated that the conviction was merely <u>nolle prossed</u>,[10] and did not analyze whether he was granted a motion for a new trial that vacated the conviction.[11]   <u>Id.</u> at 88.

In <u>Jackson</u>, the plaintiff's conviction was vacated, and the district attorney declined to re-prosecute.   337 F.3d at 77. The court in <u>Jackson</u> concluded that a "vacated judgment has no preclusive force."   <u>Id.</u> at 87 (citing <u>No E.-W. Highway Comm.</u>, 767 F.2d at 24; <u>U.S. Philips Corp.</u> v. <u>Sears Roebuck & Co.</u>, 55 F.3d 592, 598 (Fed. Cir. 1995); <u>Franklin Sav. Ass'n</u> v. <u>Office of Thrift Superv.</u>, 35 F.3d 1466, 1469 (10th Cir. 1994)).

---

[10] Further review by the First Circuit assumed, <u>without deciding</u>, that it was unlikely that <u>Johnson's</u> prior criminal proceeding was vacated or invalidated because it continued to be cited as precedent.   <u>Johnson</u> v. <u>Mahoney</u>, No. 04-1745, 2005 U.S. App. LEXIS 29571, at *2 (1st Cir. Nov. 14, 2005).   This is understandable because <u>nolle prosequi</u>, unlike an order for a new trial, does not vacate the judgment.

[11] In <u>Echavarria</u> v. <u>Roach</u>, the plaintiff was convicted and later granted a new trial; thereafter he was "<u>nolle prossed</u>," and subsequently he raised claims under section 1983.   No. 16-11118-ADB, 2017 U.S. Dist. LEXIS 144589, at *5 (D. Mass. Sept. 7, 2017) (Burroughs, J.).   Although the <u>Echavarria</u> court -- citing <u>Johnson</u> -- allowed the issues to be re-tried because they were discussed "briefly," it did not draw any difference between <u>Johnson's</u> <u>nolle prosequi</u> and <u>Echavarria's</u> new trial.   <u>Id.</u> at *27.   It seems, however, that the <u>Echavarria</u> court would have given preclusive effect to the vacated judgment if the issues had been addressed in more detail.   <u>Id.</u> at 26.   Yet this decision, which is factually very similar to Schand's situation, is of little help because it fails to distinguish the effects of a "<u>nolle prossed</u>" conviction or a vacated judgement on issue preclusion.

In Cosenza v. City of Worcester, the plaintiff was convicted and later granted a new trial.  355 F. Supp. 3d 81, 89 (D. Mass. 2019) (Hillman, J.).  The Cosenza court held that preclusion was proper in that case -- because there was a later-in-time decision issued after the conviction was vacated -- but stated that vacated judgments do not have preclusive effects. Id. (citing Lingis v. Waisbren, Mass. Super. LEXIS 269, 2011 WL 6379283, at *2 (Mass Super. Ct. Oct. 5, 2011) (McIntyre, J.); No E.-W. Highway Comm., Inc. v. Chandler, 767 F.2d 21, 24 (1st Cir. 1985) ("A vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case."); Restatement (Second) of Judgments § 13 cmt. F (1982) ("[J]udgment ceases to be final if it is in fact set aside by the trial court, as it would be upon the granting of a motion for a new trial.")).

Accordingly, this Court distinguishes Johnson, disregards Echavarria, and follows Jackson, No E.-W. Highway Comm., and U.S. Philips Corp..  Justice Murphy's Decision, therefore, does not have preclusive effect because Schand's conviction was vacated the moment Justice Kinder granted his motion for a new trial.

This analysis is, in any event, rather academic because Judge Ponsor correctly granted the motion for summary judgement on the fabrication and suppression of evidence claims.

[11]

### 3. Scammons Report

Judge Ponsor ruled that the element of agreement regarding coordination among the Police Officers to obtain Schand's conviction could reasonably be inferred from the "improper identification procedures." Judge Ponsor Decision 78-79. Judge Ponsor further indicated that this agreement element "must be inferred from all the circumstances." Id. at 78 (citing Earle v. Benoit, 850 F.2d 836, 843 (1st Cir. 1988)).

The Police Officers incorrectly assert that Judge Ponsor framed the conspiracy claim exclusively as to the improper identification procedures, and that the Scammons Report referred only to the suppression or fabrication of evidence. See Defs.' Resp. 4-7. This Court correctly admitted the Scammons Report as a specific overt act of the conspiracy claim because it could reasonably have been inferred that the Scammons Report contained exculpatory evidence.[12]

### 4. Evidence not Uncovered at Trial

The Police Officers argue that this Court prevented them from "presenting evidence of previous court decisions to mitigate the impact" of the Scammons Report. Defs.' Resp. 7. This argument is meritless because those decisions were vacated

---

[12] See Tr. Jury Trial Day 1 (Sep. 9, 2019) ("Trial Day 1 Tr.") 9, 10, 15, 21, 35, ECF No. 282; Trial Day 9 Tr. 37-39.

and not relevant to Schand's wrongful conviction trial.  <u>See</u>
<u>supra</u> II.A.2.

**B.   Jury Instruction**

For the improper identification procedures claim, this
Court instructed the jury that the Police Officers would be
"liable" if "in acting as police officers," they did not
"conform their conduct to what a reasonable police officer, back
in 1986, would have done under the same or similar circumstances
having to do with identification procedures."  Trial Day 9 Tr.
27, 30-34.

Schand argues that this Court's instruction was proper
because, as a whole, it did convey the applicable law.[13]  Pl.'s
Resp. 1-2 (citing <u>Rosa-Rivera</u> v. <u>Dorado Health, Inc.</u>, 787 F.3d
614, 620 (1st Cir. 2015); <u>United States</u> v. <u>McGill</u>, 953 F.2d 10,
12 (1st Cir. 1992)).  The Police Officers counter that Schand's
argument is "simply wrong" because, even considering the jury

---

[13] Schand also argues that, even if the instruction was
erroneous, it was harmless because the evidence "at a minimum"
demonstrated that the Police Officers acted "with recklessness
or deliberate indifference . . . in carrying out an unduly
suggestive identification process."  Pl.'s Response 2-3 (citing
<u>McDonald</u> v. <u>Town of Brookline</u>, 863 F.3d 57, 63-64 (1st Cir.
2017)).  This argument is without merit for, while the evidence
surely warranted a finding of recklessness and deliberate
indifference, it did not compel such a finding.
    Schand further argues that the Police Officers' objection
to the jury charge should be reviewed for plain error, since
they did not properly object to the jury instruction.  <u>Id.</u> at 3.
The Court already ruled that the Police Officers did preserve
their rights, <u>see</u> Tr. Mot. Hr'g. 37.

instruction as a whole, this Court failed to "charge on the
fundamental elements of the theory." Defs.' Resp. 2.  The
Police Officers insist that the plaintiff must prove
"affirmative abuse of power," not merely negligence.  Id.
(citing Daniels v. Williams, 474 U.S. 327, 330 (1986)).  The
reasonableness standard instructed by this Court, the Police
Officers assert, is a negligence standard.  Id.

> **1.   Standard to Prove Liability in a Violation of the
> Due Process Clause**

The protections of the Due Process Clause are triggered
when a government official conduct's "reflects a reckless or
callous indifference to an individual's rights." Germany v.
Vance, 868 F.2d 9, 18 (1st Cir. 1989) (citing Maldonado Santiago
v. Velazquez Garcia, 821 F.2d 822, 831 (1st Cir. 1987); Clark v.
Taylor, 710 F.2d 4, 9 (1st Cir. 1983)).

> An official displays such reckless or callous
> indifference when it would be manifest to any
> reasonable official that his conduct was very likely
> to violate an individual's constitutional rights.
> Although such reckless or callous indifference falls
> short of intentional or willful conduct, it still may
> exemplify the 'arbitrary exercise of the powers of
> government.' Negligence, in contrast -- no matter how
> 'gross' it may be -- exemplifies lack of care, rather
> than the abuse of power.

Id. (emphasis added) (internal citations omitted).

The Police Officers' argument that a reasonableness
standard is equal to a negligence standard is misplaced.  This
Court's instructions set forth the substance of the First

Circuit's reckless or callous indifference standard.  See  Trial
Day 9 Tr. 31-32 ("So in this case Mr. Schand must put forth
sufficient evidence to show that it was more likely than not
that the identification used by each [Police Officer]. . .
placed such a special focus on Mr. Schand that Mr. Schand would
be identified by the witness as the culprit, as the murderer.
Unnecessarily suggestive identification procedures are conducive
to irreparable mistaken identifications").  The Court's
instructions went well beyond a negligence standard, which is
simply lack of care, to specify that the jury must find that a
reasonable officer would have known that the improper procedures
were likely to violate Schand's constitutional rights by
"plac[ing] such a special focus on Mr. Schand that Mr. Schand
would be identified by the witness as the culprit."  Trial Day 9
Tr. 31-32.

This Court is mindful that, under plain error review, a new
trial is warranted only "to prevent a clear miscarriage of
justice."  Pouring v. Greer, 18 F.3d 979, 983 (1st Cir. 1994)
(citing Wells Real Estate, Inc. v. Greater Lowell Bd. Of
Realtors, 850 F. 2d 803,809 (1st Cir. 1988)).  The error must
have been so serious that it "affected the fairness, integrity
or public reputation of the judicial proceedings."  Id. (quoting
Lash v. Cuts, 943 F. 2d 147, 152 (1st Cir. 1991); Smith v.

Massachusetts Inst. of Tech., 877 F.2d 1106, 1110 (1st Cir. 1989)).  There was no such error here.

The "reasonable police officer in 1986" standard had been exhaustively backed up at trial through the direct and cross examination of the plaintiff's police practices expert who testified repeatedly that to fall markedly below this standard was evidence of recklessness and deliberate indifference.  This Court never equated the requisite standard with negligence —- in fact that term was never used throughout the trial.  See generally Trial Day 9 Tr.  The Court declined to give a "more than negligence" charge because, as explained above, the law of negligence plays no role in adjudicating this due process violation.  The "reasonable police officer in 1986" instruction, as given by this Court, was proper.

### C.   Attorney's Fees and Costs

Schand is requesting an attorneys' fee award of $2,778,769.50 and a costs award of $212,682.30.  Pls.' Mem. L. Supp. Mot. Reimbursement Costs, Atts.' Fees ("Pls.' Mot. Fees & Costs"), ECF No. 245.  The Police Officers counter that the fees requested must be denied because the time report submitted by Schand's attorneys -- of the law firm White & Case LLP ("White & Case") -- is not contemporaneous, they overstaffed the litigation team, and they failed to justify the fees.  Defs.' Opp'n Att. Fees ("Opp'n Fees"), ECF No. 253.  Additionally, the

Police Officers ask the Court to deny or reduce the costs and expenses incurred because some of the charges (hotels, "team cocktails," private cab or driver rides, and expert witness) are not reasonable.  Id.

For the reasons explained below, this Court awards attorneys' fees in the sum of **$347,759.20**, and costs and expenses in the sum of **$95,303**.

### 1.  Attorneys' Fees

The lodestar approach is the proper method to calculate attorneys' fees.  Marrotta v. Suffolk Cty., 726 F. Supp. 2d 1, 4 (D. Mass. 2010).  This approach requires the calculation of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  The party requesting the fees bears the burden of establishing and documenting the hours expended and the hourly rates charged, as well as proving their reasonableness.  Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008).

### a)  Number of Hours Expended

If the hours are inadequately documented by the movant, the court may reduce the number of hours billed.  Conservation Law Found., Inc. v. Patrick, 767 F. Supp. 2d 244, 251 (D. Mass. 2011).  "[T]he absence of detailed contemporaneous time records,

except in extraordinary circumstances, will call for a
substantial reduction in any award or, in egregious cases,
disallowance." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952
(1st Cir. 1984). When a firm uses the "block-billing method" –
a method that does not itemize the time expended on specific
tasks -- a court, instead of deciphering the billed tasks, can
apply a global reduction of the overall time billed for each
attorney. See Conservation Law Found., Inc., 767 F. Supp. 2d at
253.

After examination of the block-billed records submitted by
White & Case, this Court will reduce by sixty percent the
overall time billed for each attorney. This Court is content
that the sixty-percent flat rate reduction also accounts for
overstaffing -- if any -- in White & Case's litigation team.

A court may also deduct time spent working on
"unsuccessful, severable claims." Coutin v. Young & Rubicam
P.R., Inc., 124 F.3d 331, 339 (1st Cir. 1997). The Court may
discount for work performed in service of unsuccessful
plaintiffs and claims when they diverged from the successful
core facts and theory. Cf. System Mgmt., Inc. v. Loiselle, 154
F. Supp. 2d 195, 209-10 (D. Mass. 2001); Dixon v. International
Broth. of Police Officers, 434 F. Supp. 2d 73, 83-84 (D. Mass.
2006). Schand was successful on his claims of improper
identification procedures and conspiracy, ECF No. 243, but

unsuccessful in the malicious prosecution claim, Trial Day 8 Tr. 142.  Accordingly, this Court will, again, reduce the total hours expended by sixty percent.

The total hours claimed by each attorney are summarized in Table 1 below.[14]

| Table 1 | | | |
|---|---|---|---|
| Attorney | Work hours | Adjusted number of hours for block-billing (60% reduction) | Adjusted number of hours for unsuccessful claims (60% reduction) |
| Heather McDevitt | 305.8 | 183.48 | 110.088 |
| Joshua Weedman | 510.9 | 306.54 | 183.924 |
| Jacqueline Chung | 389.1 | 233.46 | 140.076 |
| Kevin Adam | 402.2 | 241.32 | 144.792 |
| Camille Shepherd | 132.7 | 79.62 | 47.772 |
| Eugene Hutchinson | 290.9 | 174.54 | 104.724 |
| Elizabeth Stainton | 526.2 | 315.72 | 189.432 |
| Cristen Callan | 323.1 | 193.86 | 116.316 |
| Elizabeth Goodwin | 421.5 | 252.9 | 151.74 |

### b)     Reasonable hourly rate

After determining the number of hours reasonably expended, the following step in calculating the lodestar requires the court to determine a reasonable hourly rate which is "benchmarked to the 'prevailing rates in the community' for lawyers of like 'qualifications, experience, and specialized

---

[14] The number of hours reported by each attorney is taken from the Timekeeper Summary submitted by Schand.  Decl. Joshua D. Weedman Supp. Pls.' Mot. Reimbursement Atts.' Fees & Costs, Ex. C, White & Case Legal Fees Summary (June 19, 2019 – September 20, 2019) ("Timekeeper Summary") 1, ECF No. 246-3.

competence.'"  Shea v. Porter, No. 08-12148-FDS, 2015 U.S. Dist.
LEXIS 141134, at *14 (D. Mass. Oct. 16, 2015) (Saylor, J.)
(quoting Gay Officers League, 247 F.3d at 295); Grendel's Den,
749 F.2d at 955 ("'Reasonable fees' under § 1988 are to be
calculated according to the prevailing market rates in the
relevant community.").  "The relevant community for determining
hourly rates is the community where the court sits."  Stokes v.
Saga Int'l Holidays, Ltd., 376 F. Supp. 2d 86, 92 (D. Mass.
2005) (Collings, M.J.).

The trial occurred in Springfield, Massachusetts, and
therefore, the relevant community there is what a civil rights
attorney in Springfield, Massachusetts -- not what a corporate
attorney in New York City working at a global law firm -- would
charge.  White & Case failed in its burden to request a
reasonable rate since its request is based on what "is charged
in New York for lawyers of similar experience and expertise."
Pls.' Mot. Fees & Costs 9.

This Court finds that a reasonable hourly rate for a first-
year civil rights attorney in Springfield, Massachusetts to be
$125 and a more experienced attorney with over 10 years of
experience to be $450 per hour.  See Rhode Island Med. Soc'y v.
Whitehouse, 323 F. Supp. 2d 283, 292 (D.R.I. 2004) ("In
ascertaining the rates to be awarded, the district court need
not rely on information supplied by the parties, and remains

free to utilize its own knowledge of attorneys' fees in the
relevant area."). This Court, therefore, will proportionately
reduce the hourly rate reported by White & Case per level of
attorney in the manner described in table 2 below.[15]

| Table 2 | |
|---|---|
| **White & Case Title** | **Adjusted Hourly Rate** |
| Partner / Counsel / Level 10+ | $450 |
| Level 9 | $413.99 |
| Level 8 | $377.98 |
| Level 7 | $341.97 |
| Level 6 | $305.96 |
| Level 5 | $269.95 |
| Level 4 | $233.94 |
| Level 3 | $197.93 |
| Level 2 | $161.92 |
| Level 1 | $125 |

Table 3 below describes the application of the
aforementioned rates to the litigation team of White & Case:

| Table 3 | | | |
|---|---|---|---|
| **Name** | **Level** | **Reference rate[16]** | **Adjusted rate** |
| Heather McDevitt | Partner | $1,245.00 | $450 |
| Joshua Weedman | Counsel | $995 | $450 |
| Jacqueline Chung | Level +10 | $960 | $450 |
| Kevin Adam | Level 7 | $910 | $341.97 |
| Camille Shepherd | Level 4 | $840 | $233.94 |
| Eugene Hutchinson | Level 3 | $770 | $197.93 |
| Elizabeth Stainton | Level 3 | $770 | $197.93 |
| Cristen Callan | Level 1 | $550 | $125 |
| Elizabeth Goodwin | Level 1 | $550 | $125 |

---

[15] This Court relied on the Timekeeper Summary to obtain the
title and rate per hour of work for each attorney.

[16] See Timekeeper Summary 1.

Per the above determinations, White & Case is entitled to recover attorneys' fees in the amount of **$347,759.20,** as set forth in Table 4 below.

| Table 4 | | | |
|---|---|---|---|
| Name | Adjusted rate | Adjusted total number of hours | Fees |
| Heather McDevitt | $450.00 | 110.088 | $49,539.60 |
| Joshua Weedman | $450.00 | 183.924 | $82,765.80 |
| Jacqueline Chung | $450.00 | 140.076 | $63,034.20 |
| Kevin Adam | $341.97 | 144.792 | $49,514.52 |
| Camille Shepherd | $233.94 | 47.772 | $11,175.78 |
| Eugene Hutchinson | $197.93 | 104.724 | $20,728.02 |
| Elizabeth Stainton | $197.93 | 189.432 | $37,494.28 |
| Cristen Callan | $125.00 | 116.316 | $14,539.50 |
| Elizabeth Goodwin | $125.00 | 151.74 | $18,967.50 |
| **TOTAL** | | | **$347,759.20** |

### 2.  Costs

A successful civil rights plaintiff is entitled to certain expenses that attorneys customarily bill to their clients.  See Fed. R. Civ. P. 54(d); Poy v. Boutselis, 352 F.3d 479, 490 (1st Cir. 2003).

> In determining what expenses should be awarded, a court must apply a test of reasonableness and necessity.  It is well-established in awarding fees in a civil rights case that certain out-of-pocket costs incurred by the plaintiffs' attorneys, including transportation, lodging, parking, food and telephone expenses can be reimbursed as reasonable and necessary costs and expenses.

Rhode Island Med. Soc'y, 323 F. Supp. 2d at 317 (internal quotation marks removed) (quoting In re Boston & Maine Corp. v. Moore, 776 F.2d 2, 11 (1st Cir. 1985)).

[22]

The Police Officers seek a substantial reduction to the costs requested by Schand, particularly in respect to "$900 hotel rooms, $400 cab rides . . . $300 'team cocktails,' [and] $13,800 as an expert witness fee paid to Louis O'Neill on June 5, 2015, apparently by Thompson & Thompson, P.C. . . . related to the civil suit against the Commonwealth of Massachusetts in which the Thompsons represented the Plaintiff, which would not be recoverable here." Opp'n Fees 12.

### a) Out-of-State Attorneys

Schand failed to explain why out-of-state attorneys who are not specialists in civil rights were "necessary" to litigate his case. See Parker v. Town of Swansea, 310 F. Supp. 2d 376, 400 (D. Mass. 2004) (Dein, M.J.) (denying hotel cost incurred by out-of-state counsel because plaintiff did not provide information as to why such counsel was necessary); cf. Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983) (per curiam) (allowing reimbursement of reasonable and necessary expenses incurred by out-of-state counsel including costs for transportation and lodging where the attorneys in question were specialized and brought to the case experience and resources not easily duplicated locally).  White & Case's competence and expertise is unquestioned.  Nevertheless, this Court assumes that Schand could have found similar competence and expertise in a local market -- including attorneys from the White & Case

Boston office.  Absent an explanation why the White & Case New

York team expertise "was not easily duplicated locally," id.,

this Court will reduce the requested costs by eliminating

charges that Boston-based counsel would have not incurred.

"The Court may exercise discretion when awarding the

prevailing party costs and reimbursement of expenses." Johnson

v. Rhode Island, No. C.A. 98-266T, 2000 U.S. Dist. LEXIS 3773,

at *36-37 (D.R.I. Mar. 22, 2000).  Reviewing the record, this

Court therefore rules that some of the expenses that White &

Case seeks to recover are unreasonable or not recoverable, since

they would not have been incurred had Schand used local counsel.

### (1)  Hotel

Springfield is located about 100 miles away from Boston, an

average of 2 hours travel time.  Requiring attorneys from Boston

to commute 4 hours per day seems too burdensome, so this Court

allows recovery for the reasonable cost of the hotel nights in

Springfield.  Six hotel nights in Boston are disallowed since

such cost would have not been incurred by Boston counsel.[17]  See

---

[17] Table 5 list the disallowed hotel expenses:

| Table 5 | |
|---|---|
| Narrative | Bill amount |
| Lodging - Hotel in Boston re Deposition of MP TC - 30/04/17 Chase, Ashley | $273.53 |
| Lodging - Traveled to Boston, MA to attend deposition. - 01/05/17 Elizabeth Stainton | $235.77 |

Guillemard-Ginorio v. Contreras, 603 F. Supp. 2d 301, 327
(D.P.R. 2009).

According to the General Services Administration, the
allowance for lodging (excluding taxes) in 2019 for Springfield,
Massachusetts was $111 per night.  U.S. General Services
Administration, FY 2019 Per Diem Rated for Springfield,
Massachusetts ("2019 Allowance"),
https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-
rates-
lookup/?action=perdiems_report&state=MA&fiscal_year=2019&zip=&ci
ty=springfield (last visited August 17, 2020).  This Court deems
the General Services Administration amounts reasonable and uses
them as a guide in the present case.

Schand listed hotel expenses for a total amount of
$67,892.10 (with 57 items listed in the "work quantity" tab).
See Decl. Joshua D. Weedman Supp. Pls.' Mot. Reimbursement
Atts.' Fees & Costs, Ex. E, Cost Summary (October 15, 2019)

| | |
|---|---|
| Lodging - Traveled to Boston, Massachusetts to attend expert depositions. - 24/08/17 Elizabeth Stainton | $456.65 |
| Lodging - Hotel Charges - Boston Harbor Hotel - 18/06/19 Heather McDevitt | $942.15 |
| Lodging - Boston Harbor Hotel - 18/06/19 Joshua Weedman | $891.79 |
| Lodging - Traveled to Boston, MA to attend hearing. - 18/06/19 Jacqueline Lai Chung | $891.79 |
| **TOTAL** | **$3,691.68** |

("Cost Summary") 2-3, ECF No. 246-5.  First, this Court subtracts six nights from the 57 nights listed in the Cost Summary, since they are listed as hotel nights at a Boston hotel -- instead of Springfield.  The Court then applies the reasonable rate ($111 per night) to the remaining allowed 51 nights.  Schand's hotel expenses reimbursement, therefore, is allowed in the sum of **$5,661**.

### (2)  Meals

Schand is requesting an average of $54.27 per meal ($13,295.87 for 245 meals).[18]  See Cost Summary 2.  This Court allows reasonable cost for meals.  See Guillemard-Ginorio, 603 F. Supp. 2d at 328 (allowing food expenses to out-of-town counsel).  This Court, however, will not allow reimbursements for costs related to cocktails or team drinks, totaling $631.27. Cost Summary 26, 33, 39, 40, 47, 48, 51, 52.

According to the General Services Administration the allowance for meals and incidental expenses, during 2019 in Springfield, Massachusetts was $56.  2019 Allowance.

---

[18] Table 6 below aggregates all the meals costs requested.

| Table 6 | | |
|---|---|---|
| Cost type | Amount | Quantity |
| Travel meal | $7,330.78 | 170 |
| Overtime meal | $606.39 | 27 |
| Business meals | $5,031.00 | 43 |
| Conference room dining | $327.70 | 5 |
| **TOTAL** | $13,295.87 | 245 |

Consequently, this Court awards meal costs in the amount of **$3,942.25** (81.67 full daily meals -- 245 meals divided by 3 meals per day -- at a rate of $56, minus the cocktails expenses).

### (3)  Travel expenses

Schand requests a total of $24,454.07 in travel expenses: $1,232.00 in parking; $2,252.99 in car rental; $1,168.18 in airfare; $11,383.33 in taxi business; $180.70 in taxi overtime; $223.02 in mileage; $44.00 in bus out of town; $152.35 in local travel; and $7,817.50 in train - out of town.  <u>See</u> Cost Summary.

Since Boston counsel might have incurred similar parking, local travel, car rental, mileage and bus expenses, this Court allows -- without deductions -- those requested costs, for an amount of $3,904.36.  It is reasonable to think that local attorneys would require the use of trains, taxis, and buses. This Court, however, will cap the other travel expenses sought at an amount of $50, since any amount beyond $50 would be an unnecessary cost had Schand hired local counsel. [19]  Table 7 below shows the adjusted rate for travel expenses:

---

[19] It is unreasonable to think that a Boston attorney will expend any amount in airfare to Springfield, Massachusetts, but this Court is content that the $50 cap amount will correct any of these excessive costs.

| Table 7 | | |
|---|---|---|
| Narrative[20] | Bill amount | Adjusted cost |
| Train - Deposition. - 28/10/16 Caitlin Cipicchio | $82.00 | $50.00 |
| Train - Amtrak from NYC to New Haven, CT (one way ticket) - 01/02/17 Joshua Weedman | $78.00 | $50.00 |
| Train - Depositions in Springfield, MA. - Mark Schand case. Two rail tickets for Caitlin Cipicchio and Joshua Weedman. - 03/02/17 Caitlin Cipicchio | $210.00 | $100.00 |
| Train - Depositions in Springfield, MA. - Mark Schand case. - 26/01/17 Caitlin Cipicchio | $78.00 | $50.00 |
| Train - Traveled to Springfield, MA to attend deposition of the City of Springfield. - 16/02/17 Elizabeth Stainton | $236.00 | $50.00 |
| Train - Traveled to Springfield, MA to attend deposition of the City of Springfield. - 15/02/17 Elizabeth Stainton | $78.00 | $50.00 |
| Train - Springfield, MA for Schand Depositions - 15/02/17 Joshua Weedman | $78.00 | $50.00 |
| 02/01/2017 -VOUCHER NUMBER NP244085-1 - CAITLIN CIPICCHIO - FROM NEW HAVEN CT TO SPRINGFIELD MA | $311.75 | $50.00 |
| 02/15/2017 -VOUCHER NUMBER NP249354-1 - ELIZABETH STAINTON - | $368.56 | $50.00 |

---

[20] See Cost Summary.

| | | |
|---|---|---|
| FROM NEW HAVEN CT TO SPRINGFIELD MA | | |
| 02/16/2017 -VOUCHER NUMBER NP249746-1 - Elizabeth Stainton - FROM SPRINGFIELD MA TO NEW HAVEN CT | $370.62 | $50.00 |
| 03/22/2017 -VOUCHER NUMBER NP357340 - Jacqueline Chung - FROM 50 UNION AVE NEW HAVEN CT TO 1 Monarch Pl SPRINGFIELD MA | $380.64 | $50.00 |
| 03/23/2017 -VOUCHER NUMBER NP28563 - Jacqueline Chung - FROM 800 HALL OF FAME AVE Springfield MA TO 50 Union Avenue NEW HAVEN CT | $238.00 | $50.00 |
| Train - Traveled to Springfield, MA to take deposition. - 12/04/17 Jacqueline Lai Chung | $136.00 | $50.00 |
| Train - Travel to New Haven, CT/Springfield, MA to attend deposition. - 12/04/17 Elizabeth Stainton | $136.00 | $50.00 |
| Train - Traveled to New Haven, CT/Springfield, MA to attend deposition. -17/04/17 Elizabeth Stainton | $118.00 | $50.00 |
| 04/18/2017 -VOUCHER NUMBE NP8590653 - Joshua Weedman - FROM 2 BOLAND WAY SPRINGFIELD MA TO 50 UNION AVE NEW HAVEN CT | $424.00 | $50.00 |
| 04/18/2017 -VOUCHER NUMBER NP28735 - ELIZABETH STAINTON - FROM 2 BOLAND WAY SPRINGFIELD MA TO 50 Union Ave NEW HAVEN CT | $237.52 | $50.00 |
| Train - Amtrak Train - 14/04/17 Joshua Weedman | $91.00 | $50.00 |

| | | |
|---|---|---|
| Train - Amtrak Train - 18/04/17 Joshua Weedman | $136.00 | $50.00 |
| Train - Train to/from NY to Boston re Deposition of MP TC - 30/04/17 Chase, Ashley | $320.00 | $50.00 |
| Train - Traveled to Boston, MA to attend deposition. - 30/04/17 Elizabeth Stainton | $297.00 | $50.00 |
| 04/17/2017 -VOUCHER NUMBER NP269641-1 - Joshua Weedman - FROM NEW HAVEN CT TO SPRINGFIELD MA | $389.55 | $50.00 |
| 04/13/2017 -VOUCHER NUMBER NP268446-1 - Jacqueline Chung - FROM SPRINGFIELD MA TO NEW HAVEN CT | $370.62 | $50.00 |
| Train - Traveled to Springfield, MA to take deposition. - 23/05/17 Jacqueline Lai Chung | $91.00 | $50.00 |
| Train - Traveled to Springfield, MA to attend deposition. - 23/05/17 Elizabeth Stainton | $91.00 | $50.00 |
| 05/02/2017 -VOUCHER NUMBER NP275379-2 - Natalie Grano - FROM HARTFORD CT TO NEW HAVEN CT | $368.56 | $50.00 |
| 05/02/2017 -VOUCHER NUMBER NP275379-1 - Natalie Grano - FROM NEW HAVEN CT TO HARTFORD CT | $368.56 | $50.00 |
| Train - Traveled to New Haven CT/Springfield, MA to attend deposition. 19/05/17 Jacqueline Lai Chung | $91.00 | $50.00 |
| Train - Traveled to New Haven, CT/Springfield, MA to attend deposition. | $105.00 | $50.00 |

| | | |
|---|---|---|
| - 17/05/17 Jacqueline Lai Chung | | |
| 05/19/2017 -VOUCHER NUMBER NP8602514 - Jacqueline Chung - FROM 2 Boland Way SPRINGFIELD MA TO 50 UNION AVE NEW HAVEN CT | $486.70 | $50.00 |
| 05/19/2017 -VOUCHER NUMBER NP8602568 - Joshua Weedman - FROM 2 Boland Way SPRINGFIELD MA TO 50 UNION AVE NEW HAVEN CT | $541.00 | $50.00 |
| Train - Amtrak - 19/05/17 Joshua Weedman | $133.00 | $50.00 |
| Train - Amtrak - 17/05/17 Joshua Weedman | $105.00 | $50.00 |
| 04/12/2017 -VOUCHER NUMBER XT1144483 - Jacqueline Chung - FROM 50 Union Ave NEW HAVEN CT TO 1 Monarch Place SPRINGFIELD MA | $344.31 | $50.00 |
| Train - Traveled to New Haven, CT/Springfield, MA to attend deposition. - 07/06/17 Jacqueline Lai Chung | $91.00 | $50.00 |
| Train - Traveled to New Haven, CT/Springfield, MA to attend deposition. - 06/06/17 Jacqueline Lai Chung | $78.00 | $50.00 |
| 06/06/2017 -VOUCHER NUMBER NP371240 - Jacqueline Chung - FROM 50 UNION AVE NEW HAVEN CT TO 2 BOLAND WAY SPRINGFIELD MA | $341.21 | $50.00 |
| 06/07/2017 -VOUCHER NUMBER NP 29053 - Jacqueline Chung - FROM 2 Boland Way SPRINGFIELD MA TO 50 Union Avenue NEW HAVEN CT | $263.88 | $50.00 |

| | | |
|---|---|---|
| 05/23/2017 -VOUCHER NUMBER NP283095-1 - Elizabeth Stainton - FROM NEW HAVEN CT TO SPRINGFIELD MA | $311.75 | $50.00 |
| 05/24/2017 -VOUCHER NUMBER NP283686-1 - Elizabeth Stainton - FROM SPRINGFIELD MA TO NEW HAVEN CT | $370.62 | $50.00 |
| 05/17/2017 -VOUCHER NUMBER NP280992-1 - Joshua Weedman - FROM NEW HAVEN CT TO SPRINGFIELD MA | $389.55 | $50.00 |
| Train - Traveled to New Haven, CT/Springfield, MA to attend deposition. - 18/07/17 Jacqueline Lai Chung | $91.00 | $50.00 |
| Train - Traveled to New Haven, CT/Springfield, MA to attend deposition. - 18/07/17 Jacqueline Lai Chung | $118.00 | $50.00 |
| 07/17/2017 -VOUCHER NUMBER NP8617246 - Michael Immordino - FROM 75 State Street BOSTON MA TO 10 Memorial Boulevard PROVIDENCE RI | $333.12 | $50.00 |
| 07/18/2017 -VOUCHER NUMBER NP29291- Jacqueline Chung - FROM 2 Boland Way SPRINGFIELD MA TO 50 Union Avenue NEW HAVEN CT | $257.44 | $50.00 |
| Train - Traveled to Boston, Massachusetts to attend expert depositions. - 24/08/17 Elizabeth Stainton | $384.00 | $50.00 |
| Train - Traveled to Boston, Massachusetts to attend expert depositions. - 23/08/17 Elizabeth Stainton | $170.00 | $50.00 |

| | | |
|---|---|---|
| Train - Amtrak - 24/08/17 Joshua Weedman | $170.00 | $50.00 |
| 11/16/2017 -VOUCHER NUMBER 7111612205 - PICO GABRIELLA - FROM 1221 6 AVE MANHATTAN NY TO 62 SUTTON ST BROOKLYN NY | $62.98 | $50.00 |
| Train - Amtrak - 23/04/18 Heather McDevitt | $75.00 | $50.00 |
| Train - Traveled to Springfield, MA for a summary judgment motion for Schand v. City of Springfield. - 25/04/18 Elizabeth Stainton | $123.00 | $50.00 |
| Train - Amtrak Train - 23/04/18 Joshua Weedman | $75.00 | $50.00 |
| 04/26/2018 -VOUCHER NUMBER NP1801750262 - Jacqueline Chung - FROM 1 Monarch Place SPRINGFIELD MA TO Newark Airport Newark NJ | $494.50 | $50.00 |
| 04/26/2018 -VOUCHER NUMBER NP393907-1 - Elizabeth Stainton - FROM SPRINGFIELD MA TO 1221 6th Avenue MANHATTAN NY | $617.60 | $50.00 |
| Train - court hearing in Massachusetts - 25/04/18 Eugene Hutchinson | $123.00 | $50.00 |
| Train - Amtrak to/from New Haven, CT for deposition - 13/05/19 Joshua Weedman | $155.00 | $50.00 |
| Train - Traveled to New Haven, CT/Springfield, MA to participate in hearing at Federal Court House. - 13/05/19 Jacqueline Lai Chung | $133.00 | $50.00 |
| 05/13/2019 - VOUCHER NUMBER NP532247*1 - Jacqueline Chung - FROM 50 Union Avenue NEW | $312.78 | $50.00 |

| | | |
|---|---|---|
| HAVEN CT - TO 300 State Street SPRINGFIELD MA | | |
| 05/20/2019 - VOUCHER NUMBER NP536134*1 - Elizabeth Barnes - FROM 1221 Avenue of the Americ Manhattan NY -TO 26-05 24th Avenue QUEENS NY | $100.05 | $50.00 |
| Airfare - Additional fare collected for changing return flight - 17/06/19 Heather McDevitt | $237.59 | $50.00 |
| Train - Amtrak Train - 18/06/19 Heather McDevitt | $309.00 | $50.00 |
| Airfare - Airfare (Original Amount 893.41) -14/06/19 Heather McDevitt | $428.31 | $50.00 |
| Train - Amtrak - Additional fare for seat upgrade - 18/06/19 Joshua Weedman | $162.00 | $50.00 |
| Train - Amtrak - 14/06/19 Joshua Weedman 1822469 | $294.00 | $50.00 |
| Train - Traveled to Boston, MA to attend hearing. - 14/06/19 Jacqueline Lai Chung | $294.00 | $50.00 |
| Train - Traveled to Boston, MA to attend hearing. - 18/06/19 Jacqueline Lai Chung | $162.00 | $50.00 |
| 06/28/2019 - VOUCHER NUMBER NP496734 - Elizabeth Stainton - FROM 50 UNION AVE NEW HAVEN CT - TO 50 State Street SPRINGFIELD MA | $344.78 | $50.00 |
| 07/01/2019 -VOUCHER NUMBER NP551679*1 - Bill Moffatt - FROM 55 Frank B Murray Stree SPRINGFIELD MA TO One | $234.30 | $50.00 |

| | | |
|---|---|---|
| Monarch Place SPRINGFIELD MA | | |
| 07/02/2019 –VOUCHER NUMBER NP551685*1 – Bill Moffatt – FROM One Monarch Place SPRINGFIELD MA TO 55 Frank B Murray Street SPRINGFIELD MA | $234.30 | $50.00 |
| Train – Travel to Springfield, MA with S. Govindgari to review exhibits from Schand's 1987, 1992, and 2013 trials. – 26/06/19 | $191.50 | $50.00 |
| Train – Travel to Springfield, MA with S. Govindgari to review exhibits from Schand's 1987, 1992, and 2013 trials. – 26/06/19 | $164.00 | $50.00 |
| Train – Train from NY to MA. – 05/09/19 Kelly Guerin | $73.00 | $50.00 |
| Train – train – 08/09/19 Tom Enering | $193.50 | $50.00 |
| Train – Network and Desktop setups for trial. Full production network installation, (12) desks outfitted with phones, monitors, & docks. (2) printers, and (4) wireless access points deployed. – 26/08/19 | $153.00 | $50.00 |
| Airfare – Schand trial office setup and support. – 04/09/19 Bernard Noland | $292.28 | $50.00 |
| Train – Travel from New York, NY to Springfield, MA. Business class seat had to be purchased when I had to change the time of the ticket to earlier in the day last minute, | $101.00 | $50.00 |

| | | |
|---|---|---|
| and the Amtrak website showed no coach seats available for purchase. – 14/09/19 | | |
| Train – Travel from Springfield, MA to New York, NY. Business class ticket was purchased because Kelly Guerin and I had fully checked out of the trial suite and the hotel and the next train only had business class seats available because it was leaving in less than 20 minutes. The following train would have been a more expensive ticket and would have been several hours later. – 21/09/19 | $79.00 | $50.00 |
| Train – Travel to Springfield to assist with trial preparation and read designations into the record before the Jury. – 08/09/19 Felipe Munoz | $98.00 | $50.00 |
| Train – Travel back from Springfield, MA. – 13/09/19 Felipe Munoz | $123.00 | $50.00 |
| Train – Train from Springfield to NYC. – 21/09/19 Kelly Guerin | $79.00 | $50.00 |
| Train – trial prep in Springfield MA –03/09/19 Elizabeth Goodwin | $188.75 | $50.00 |
| Train – Mark Schand Trial. – 19/09/19 Cristen Callan | $79.00 | $50.00 |
| Train – Mark Schand Trial. – 01/09/19 Cristen Callan | $153.00 | $50.00 |
| Taxi – Mark Schand Trial. – 13/09/19 Cristen Callan | $61.45 | $50.00 |

| Train - Amtrak - 03/09/19 Joshua Weedman | $96.00 | $50.00 |
|---|---|---|
| Mileage - Mileage Expense - 07/09/19 Heather McDevitt | $79.03 | $50.00 |
| Mileage - Mileage Expense - 14/09/19 Heather McDevitt | $79.03 | $50.00 |
| Train - Train ticket to Springfield, MA - 04/09/19 Guillermo Cuevas | $94.75 | $50.00 |
| Train - Train ticket to go back home. -21/09/19 Guillermo Cuevas | $128.00 | $50.00 |
| Mileage - Trial site equipment removal - 24/09/19 Brian Spindler | $64.96 | $50.00 |
| **TOTAL** | **$18,803.40** | **$4,550** |

This Court allows the reimbursement of $4,550 corresponding to the remaining travel expenses. From the initial $24,454.07 request, this Court allows a total reimbursement for travel expenses in the amount of **$8,454.36** ($3,904.36 + $4,550).

### b)   Expert Witness Fee

This Court disallows the $13,800 for the expert witness fee paid to Louis O'Neill on June 5, 2015, since White & Case failed to indicate his "rate, hours spent, nature of work, tasks performed, [or] dates." See Guckenberger v. Boston Univ., 8 F. Supp. 2d 91, 111-12 (D. Mass. 1998) (Saris, J.) (noting that indicating only the total charged -- and no more -- is "entirely insufficient as a matter of law").

[37]

### c)  Related costs

This Court finds reasonable, and therefore allows, the reimbursement of the following expenses: computer services ($232.89); conference expense ($500.00); court costs ($200.00); deposition transcripts ($19,415.40); external document production ($468.97); professional services ($1,619.98); photocopying ($10,692.90); postage ($12.48); process service ($3,094.37); court reporter ($203.70); legal research ($139.02); document research ($1,986.94); Lexis ($100.00); Westlaw ($7,786.77); and printing ($25,311.12), for a total amount of $71,764.54.  See Guillemard-Ginorio, 603 F. Supp. 2d at 328 (allowing mail, fax and in-house photocopying, court reporter, and trial services).

On the other hand, this Court reduces by 50% the courier and mailing services since most of those costs are associated with the fact that Schand hired out-of-state counsel.  The initial courier service request of $5,786.75, therefore, is reduced to $ 2,893.375; while the initial express mail request of $5,174.27 is reduced to $2,587.135, for a joint total of $5,480.51.  See id. (allowing courier expenses "incurred locally").

The related costs, therefore, are allowed in the total amount of **$77,245.05.**

### d) Unexplained Costs

This Court will not allow costs that are not related or explained, such as miscellaneous other ($276.35); outsources WP center ($699.95); outside legal services ($9,500); publication charges ($17.00); and supplies ($21.70), totaling $10,515.

### 3. Summary of Awarded Fees and Costs

This Court awards attorneys' fees in the sum of **$347,759.20**, and cost in the total amount of **$95,303**. The Court is mindful of the complexity of the case and the years the parties' counsel -- who are highly skilled -- litigated the case. Some costs, however, were discounted or reduced because they were unreasonable, unrelated, unexplained, or unnecessary.

Tables 8, 9 and 10 below are the summary of this Court's determinations:

| Table 8 | |
|---|---|
| Initial fees request | $2,778,769.50 |
| Court award | $347,759.20 |

| Table 9 | | |
|---|---|---|
| Cost | Initial request | Court award |
| Hotel | $67,892.10 | $5,661 |
| Meals | $13,295.87 | $3,942.25 |
| Travel expenses | $24,454.07 | $8,454.36 |
| Expert witness | $13,800 | $0 |
| Related costs | $82,725.56 | $77,245.05 |
| Unexplained costs | $10,515 | $0 |
| **TOTAL** | $212,682.60 | **$95,303** |

| Table 10 | |
|---|---|
| Awarded attorney's fees | $347,759.20 |
| Awarded costs | $95,303 |
| **TOTAL** | **$443,062.20** |

## III. CONCLUSION

This Court correctly admitted the Scammons Report during trial and instructed the jury as to the procedural due process claim.  In light of lack of error from this Court's rulings, the Police Officers' motions for new trial, ECF Nos. 249, 256, 258, 262, are DENIED, and motion for remittitur, ECF No. 258, is DENIED.

Attorneys fees and costs, ECF No. 245, are GRANTED in the amount of $443,062.20, as detailed herein.


**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE